FILED

2017 AUG -9 PM 2:37

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PAMELA POWELL, Indv. and on behalf of
G.B.J.H, her minor child

CIVIL CASE NO. 6:17-CV-00528-37-GJK

In *Propria Persona*

Vs

C. DAVID BROWN, II, Indv.; WANDA LEIGH BROWN, Indv.; C. DAVID BROWN, II, P.A. as partner of BROAD AND CASSEL, P.A.; ROBERT FRANKLIN MALLETT, Indv; ROBERT F. MALLETT, L.L.C. as partner of BROAD AND CASSEL, P.A., ISAOA; DOUGLAS E. STARCHER, Indv.; DOUGLAS E. STARCHER, P.A. as partner of BROAD AND CASSEL, P.A., ISAOA; BROAD AND CASSEL, P.A.; J. GARY MILLER (NKA JAMES G. MILLER AKA JAMES GARY MILLER, JR,) Indv. and as partner of former MILLER, SOUTH AND MILHAUSEN, P.A., nka SOUTH MILHAUSEN, P.A.; MILLER JOHNSON LAW, P.L.; JEFFREY P. MILHAUSEN, Indv. and as partner of former MILLER, SOUTH AND MILHAUSEN, P.A. nka SOUTH MILHAUSEN, P.A.; ANGELA D. SHAW, indv. and as former partner of MILLER, SOUTH AND MILHAUSEN, P.A. nka SOUTH MILHAUSEN. P.A., as a former Associate Lawyer of BROAD AND CASSEL, P.A. and currently as Of Counsel for BROAD AND CASSEL, P.A.; MORRIS E. OSBORN; STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION; ORLANDO-ORANGE COUNTY EXPRESSWAY AUTHORITY, ISAOA; IRA WILLIAM 'BILL' MCCOLLUM, JR. aka

BILL McCOLLUM, Indv.; SCOTT MAXWELL; ORLANDO SENTINEL COMMUNICATIONS COMPANY, LLC as successor to ORLANDO SENTINEL COMMUNICATIONS COMPANY; A. H. BELO CORPORATION dba DALLAS MORNING NEWS; JOHN ELLIS BUSH aka 'JEB' BUSH; GEORGE WALKER BUSH; WILLIAM JEFFERSON CLINTON aka BILL CLINTON fka WILLIAM JEFFERSON BLYTHE, III; GEORGE H. W. BUSH; SHUTTS AND BOWEN aka SHUTTS AND BOWEN LLP; KURT O'BRIEN; GENERAL ELECTRIC COMPANY, GE REAL ESTATE CORP and GE REAL ESTATE dba OB COMPANIES; SIMPLY SELF STORAGE, LLC dba OB COMPANIES; OB COMPANIES, LLC; OB DEVELOPMENT CO., LLC, ISAOA; OB MANAGEMENT SERVICES, INC., ISAOA; O.B. MANAGEMENT SERVICES, INC.; GENERAL ELECTRIC COMPANY; GE REAL ESTATE as subsidiary of GENERAL ELECTRIC COMPANY; GENERAL ELECTRIC CAPITAL REAL ESTATE, as subsidiary of GENERAL ELECTRIC COMPANY; BROOKFIELD ASSET MANAGEMENT through BROOKFIELD STRATEGIC REAL ESTATE PARTNERS II FUND as a successor of SIMPLY SELF STORAGE ACQUISITIONS, LLC; KURT O'BRIEN, Indv. and as partner/manager of O.B. COMPANIES and/or SIMPLY SELF STORAGE; JESSICA M. WOLF O'BRIEN, Indv; KYLE ALLEN SCHMUTZLER; JASON JACOBSON; DEBRA A. HANLEY; O.B. COMPANIES and/or SIMPLY SELF STORAGE, operating under a fictitious entity and ISAOA; O.B. MANAGEMENT SERVICES, INC., operating under a fictitious entities, ISAOA; O.B. DEVELOPMENT SERVICES, INC., operating under a fictitious entity, ISAOA, and equity owners, Indv; O.B. DEVELOPMENT COMPANY, LLC, an Indiana corporation, operating under fictitious entities registered as foreign entities in Florida, ISAOA, and equity owners, Indv.; SIMPLY STORAGE DEVELOPMENT, INC.; SIMPLY STORAGE MANAGEMENT, LLC, ISAOA, GE CAPITAL, AKERMAN, SENTERFITT &

EIDSON, P.A., ISAOA, fka AKERMAN SENTERFITT nka AKERMAN LLP, ISAOA, LIBERTY UNIVERSITY, INC. AND ANY EQUITY OWNERS; JERRY FALWELL, JR., ROBERT MULLEN, SHENANDOAH BAPTIST CHURCH; VALUEVISION MEDIA, INC. fka SHOPNBC, fka SHOPHQ, nka EVINE LIVE, EVINE; EVINE II; EVINE Live, Inc. dba EVINE LIVE, EVINE LIVE II and EVINE; COMCAST CORPORATION fka COMCAST HOLDINGS; CLINTON GROUP, INC.; CLINTON RELATIONAL OPPORTUNITY MASTER FUND, L.P.; CANNELL CAPITAL LLC; VALUEVISION MEDIA, INC.; VALUEVISION RETAIL, INC.; VALUEVISION INTERACTIVE, INC.; VALUEVISION MEDIA ACQUISITIONS, INC.; VALUEVISION INTERNATIONAL, INC.; VALUE VISION INTERNATIONAL, INC.; MARK C. BOZEK; RUSSELL NUCE; ROBERT 'BOB' ROSENBLATT; LANDEL CLAY HOBBS; STACEY R. TRUSSONI; TRACY MARIE RAICHE ROTHSTEIN; MERSIHA DEMIROVIC; WAYNE HENRY; CENTURYLINK, INC. fdba CENTURY TEL; ASF RADIO, L.P., as successor of GE CAPITAL EQUITY INVESTMENTS, INC., GENERAL ELECTRIC COMPANY, and GENERAL ELECTRIC CAPITAL CORPORATION; NBCUNIVERSAL MEDIA, LLC, successor of NBC UNIVERSAL, INC.; NBC UNIVERSAL; PRESCOTT GROUP CAPITAL MANAGEMENT L.L.C.; PATRICIA SHUSTER as a non-probated heir of JOSEPH M. SHUSTER, SIRI ANN SHUSTER LEHMANN; THOMAS E. LEHMANN; ESTATE OF JOSEPH M. SHUSTER; PETER WALLACE SHUSTER; SUSAN SHUSTER KING; LAEL KING; ELECTRONIC CONTROLLED SYSTEMS, INC. dba KING CONTROLS dba KING; LAURA KELLY, Indv., EXECUTIVE DIRECTOR OF CFX fka CENTRAL FLORIDA EXPRESSWAY AUTHORITY as successor of ORLANDO-ORANGE COUNTY EXPRESSWAY AUTHORITY; RICHARD LYNN 'RICK' SCOTT, Indv.; and ROBERT LEE. DIETZ, Indv., LAURA DIETZ, Indv., ZIMMERMAN, KISER & SUTCLIFFE, P.A., ISAOA

**FIRST SUPPLEMENT AND**
**AMENDMENT TO VERIFIED COMPLAINT AND**
**REQUEST FOR A NON-CONGRESSIONALLY**
**CONFIRMED JUDGE, PRO HAC VICE**

COMES NOW, Plaintiffs, insofar as the Verified Complaint, Plaintiff Powell provides the following supplements and amendments, to-wit:

1. Defendant, C. David Brown, II, P.A is hereby amended to be 'C. David Brown, II, P.A.'
2. Defendant, Robert F. Mallet is hereby amended to 'Robert F. Mallett'.
3. Defendant, Robert Franklin Mallet, L.L.C. is hereby amended to 'Robert Franklin Mallett, L.L.C.'
4. MILLER, SOUTH AND MILHAUSEN, P.A., nka SOUTH MILHAUSEN, P.A. is amended as 'MILLER, SOUTH AND MILHAUSEN, P.A., its successor(s) and/or assigns.
5. STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, which address for service is Florida Attorney General, 400 S. Monroe St. #P101, Tallahassee, FL 32399.
6. Number 28 shall be amended to state: "SIMPLY SELF STORAGE ACQUISITIONS, LLC and its successor(s) and/or assignees (possibly dba or fdba OB COMPANIES) whose principal place of business is 7505 West Sand Lake Road, Orlando, Florida 32819."
7. Numbers 41 and 42 shall convey it is the belief of Plaintiffs those entities have or are operating under fictitious entities.
8. Number 45 shall be amended to omit any and all reference to Exhibit A existing.

9. VALUE VISION MEDIA, INC. shall be amended to add 'which principal place of business is at 6470 Shady Oak, Shady Oak Road, Eden Prairie, Minnesota 55344."
10. Number 65 is amended, as follows: "PRESCOTT GROUP CAPITAL MANAGEMENT, L.L.C., a Oklahoma limited liability company whose legal agent for service is 'Phil' Frohlich, 1924 S. Utica, Suite 1120 in Tulsa, Oklahoma 74104,"
11. Number 67 is amended, as follows: "NBC UNIVERSAL (NBCU), a subsidiary of COMCAST CORPORATION, a New Jersey corporation which principal place of business is located at 1701 JFK Boulevard, Philadelphia, PA 19103.
12. The line between paragraphs 85 and 86 serves no purpose and, therefore, is deleted.
13. Page 140, line 9 in paragraph 85 should read 'approximately 40 minutes apart, driving, despite his death occurring at the county seat. The first time Powell"
14. Page 140, paragraph 86, line 11 should read, "Orlando which has not ended, despite Powell and her daughter leaving the state of Florida due to these events while taking drastic measures to sever ties to Florida for several years. Transfer of assets . . . "
15. Unnumbered pages with no text thereon are hereby amended as entirely omitted.

16. Additionally, paragraph 2 under the history portion of the Verified Complaint shall be revised to omit '18.' with all subsequent text before paragraph 3 shall be part of paragraph 2.

17. Plaintiff has made numerous references to a related case being promptly filed after the commencement of this case. Plaintiff removes all references to this occurring.

18. Plaintiff supplements the Verified Complaint to convey that Plaintiff asserts no statute of limitation has expired with regard to any claim and/or remedy for relief.

19. Plaintiff further supplements the Verified Complaint to state the following as response to an Order dated July 25, 2017:

20. For more clarity, jurisdiction is gained through the primary events occurring with the United State of America and in the State of Florida through two former employers and their agents who employed Plaintiff Powell while involved in fraudulent and criminal activities. It is in this venue that citizenship is established and evidenced through the original complaint citing residences which are individuals' legal domiciles, principal places of businesses, and/or registry of businesses with the Florida Secretary of State of primary defendants which are core to the offenses against Plaintiffs. Those Defendants listed which are legal entities that cite merely addresses shall also convey they are also citizens of said states cited through their principal place of employment. Plaintiffs also was a legal resident of the State of Florida during said employment, as well as during a significant period of post-employment period involving slander, witness-intimidations of a whistle-blower, attempts against the lives of plaintiffs which appears to be activities coordinated in such a way they align with the definition of 'RICO' activities that transcended over a period of years, primarily with a latent beginning due to a seven (7) year criminal statute of limitation expiring before advancing against the lives of Plaintiffs. This delay appears to have organized a method to exempt 'criminal motive' by said employers and/or their agents for retaliating against the Powell family for being a whistle-blower of an organization which was notoriously defined by a Grand Jury administered within the Orlando Division as a 'culture of corruption', according to 'Orlando Sentinel' newspaper reports. Defendants did not give prior notice of the employment activities necessary to collude with said law firms or to be exempt from said activities would require an apparent demotion, nor did it give clear notice of its activities and their purposes during a post-employment undesirable relationship which ultimately

occurred in a corrupt RICO program. Prior to leaving Florida, Powell was aware the organized efforts relating to Defendant 'OOCEA' was reported via 'Orlando Sentinel' for a period of approximately four and one-half (4-1/2) years which was ameliorated by the notorious Casey Anthony criminal pre-trial, trial and post-trial matters that consumed the medias' attention, thereby averting relentless attention given to the 'culture of corruption' which the public sought to root-out to preserve constitutional rights afforded to others whose citizenship had been established within the United States of America and the State of Florida, particularly within the jurisdiction of this federal court.

21. Plaintiff Powell, individually and a mother of a minor child, was particular in submitting a sworn, verified complaint due to the relentless attacks against her and her child primarily for being a whistle-blower against Defendants Broad and Cassel, P.A., C. David Brown, II, Robert F. Mallett, their legal and illegal alter-egos and affiliates, and, later many other Defendants listed in this action and for more disclosures to federal agents by Plaintiff Powell. The extensive sworn statements conveyed in the original document was deemed as necessary to protect Plaintiffs in the event that retaliations intensified against either or both which Plaintiff Powell believes would have been the result from filing a vague, 'short and concise' Complaint within this jurisdiction (as this court has expressed as its preference). Additionally, Plaintiffs believed termination of said retaliatory activities could result through making facts part of the public record and creating some accountability to third parties. If not, a sworn detailed statement would survive for prosecution purposes in this case and, perhaps, others cases. It is asserted and believed a 'short and concise' Complaint would have intensified motives to silence Plaintiffs before particulars were able to be conveyed publicly under oath. While Powell shares concerns regarding the safety of others, including Senator Scalise (LA) and others shot on June 14, 2017

in Virginia where Defendant McAuliffe is currently governor. It is strongly believed that shooting was coordinated in Virginia against a Louisiana senator due to both Plaintiffs being from Louisiana. There are other elements of that event which supports it was a threat against Plaintiffs which are omitted. Plaintiff understands general discovery methods are available with regard to facts disclosed under oath in cases; however, they are not open to the public until trial and even then may be suppressed. Many defendants have leveraged their activities through secrecy during their collusions which Plaintiff Powell believes is due to the criminal nature of activities. Plaintiff Powell sought to convey facts in the Verified Complaint in a chronological, historic manner due to the chronological, historic and connecting manner in which they occurred over an extended period of time. Had the period been shorter, it is believed the complaint would have also been brief. To prejudice the Plaintiffs due to the long-standing criminal and unethical activities against them would be to collude with Defendants to perpetuate their acts. Said historic events were identified in the 'HISTORY' of the Verified Complaint; however, they are more customary identified as 'STATEMENT OF FACTS' and, thus, Plaintiffs hereby supplements and amends the heading as 'HISTORY - STATEMENT OF FACTS'. While the Court identifies the text as a 'stream of consciousness' Powell asserts every form of human activity involving ideas would qualify within this description and should not bear any negative connotation. The Court has also used 'sham' as part of its description; however, Powell relies upon years of experience as a supervisor of federal court to respond that no court should legally file a Verified Complaint, assign a judge and case number while, during that entire period restricting Petitioner(s) to Proceed *In Forma Pauperis ('IFP')* (for up to six (6) months while forbidding the Clerk authority to issue summons to release for the service upon parties), then seek to dismiss through a Rule to Show Cause why the case should not be dismissed due to a

four (4) month dormancy. Said dormancy created solely by this Court by the non-issuance of an Order granting/denying the 'IFP'. It is noted that all prior orders before the July 25, 2017 Order [post-marked July 28, 2017] did not describe or allege any 'vagueness' or lack of compliance of general requirements of stating jurisdiction, venue, relief sought or any other purported deficits in the Verified Complaint despite the opportunity to do so. This Court has sought authority to dismiss this case after making the case's activities vacant solely while withholding a ruling on a Motion to Proceed *In Forma Pauperis* while making the delay essentially a denial that was non-appealable). Also, this case was first assigned to Judge Sharp and transferred to Judge Dalton without giving any notice to Plaintiffs. The Order further criticizes Plaintiffs addressing the judge as 'Dawson' which requires the explanation that Powell learned of the filing of the case orally from the Clerk's office when a status was sought on a Motion to Proceed *In Forma Pauperis*. At that time, the assigned judge was heard as 'Dawson' which was immediately written during the call. To date, Powell has never received any notice of filing of the case giving evidence the case was first assigned to Judge Sharp or of any transfer from Judge Sharp to Judge Dalton. Also, outside of the Federal Rules of Civil Procedures, Plaintiffs have been ordered to intensify the voluminous nature of every pleading filed by requiring that three pages of the original caption head every pleading in lieu of merely allowing F.R.C.P. tradition to prevail by the use of a customary, concise caption of 'Pamela Powell, et al. v. C. David Brown, II, et al'. Also, contrary to requirements, the Court has rearranged the header to depict C. David Brown, II's, wife, 'Wanda Leigh Brown', which change has been perpetuated in indices of publications of cases on the internet and possibly use of future references in decisions and rulings used for other cases, especially decisions rendered by any appeal court(s). There were additional maneuvering regarding the former Clerk of Court, Sheryl Loesche, who was quickly removed

and reappointed as the Bankruptcy Clerk of Court in this jurisdiction shortly after the Verified Complaint was filed (before Plaintiffs were advised of said filing) in such a manner to bar the Plaintiffs to proceed with issuance of summons and affect service on defendants. This is while the Magistrate issued an order the matter would be on an eighteen (18) month resolution schedule which seeks to further prejudice access to due process in the future. Plaintiffs anticipate enduring more aversion of due process rights through the necessity of requesting an extension outside the eighteen (18) month period due delays created solely by this court that has kept Plaintiffs from proceeding with service, including the order dated July 25, 2017 which expires on August 9, 2017, despite the case being filed on March 23, 2017, averting almost 25% of the entire period allowed by the Magistrate before service may be affected on any defendant after the filing fee was paid.

22. Prior to filing the Verified Complaint, Powell was informed by a court agent there existed a limit of fifty (50) pages in initial filings; however, Powell found no local or federal rule or case law to support this misleading information. Additionally, Powell's research resulted in finding judicial decisions that convey any limit of a Complaint would purely become a denial of access to due process which is afforded through the Bill of Rights as amendments to the U. S. Constitution. Additionally, as alluded in the Verified Complaint, related cases could have been initiated; however, at least one more additional case has been consolidated into this one. Should the Court believe having separate cases would better serve the instances, and then consolidated, Plaintiffs is willing to accommodate this so long as separate filing fees are not required. Additionally, relief is restated as sought with regard to a precedence may be established that, when it is reasonably believed that there is no access to fair and reasonable due process in a local

jurisdiction, another jurisdiction may be used to administer relief. Therefore, length of any initial pleading should have always been a non-issue, according to established law.

23. In all instances of individuals as defendants, it is asserted they are legally domiciled in the states of their addresses listed in the Verified Complaint.

24. In all instances, it is asserted citizenship is achieved with regard to all parties.

25. Plaintiffs assert a 'short and plain statement of grounds for the jurisdiction' (p. 2) has been achieved in the original pleading with this amendment and supplement in layman's terms and that *pro se'* litigants are protected by law from dismissals due to lack of strict conformity. The Court may appropriately ascertain domiciliary issues when presented by defendants if any may so desire to raise that legal defense with any others. It is noted the Order dated July 25, 2017 is the second maneuver toward a dismissal by this judge after a Rule to Show Cause ('RTSC') was issued which, in fact, overlapped with this dismissal attempt since the expiration to file a response to the RTSC had not yet lapsed by July 25, 2017. This also represents a 'double-barrel shot-gun' approach against Plaintiffs' claims. Plaintiffs have filed a timely and very insightful response to the RTSC and asserts jurisdiction remains established so long as this amendment is timely filed. Plaintiffs assert had the Court waited for the response to the RTSC to be filed, the July 25, 2017 order would not have been issued.

26. With regard to stock ownership issues, Plaintiff Powell was a stock-holder while Defendants related to Evine brands and related former majority stock-holders criminally colluded to report stock activities to convey its criminal activities overtly by showing spiking stock activities using Plaintiffs' birth dates and other dates typically postured by the RICO criminal elements which evidenced a pre-eminently fraudulent relationship with Powell as an employer and a publicly traded company. This was done again during a post-employment phase

with an anticipation that Powell would seek re-employment after minor child was permanently harmed or removed from the home abruptly. As stated in the original pleading, there was conveyance of enrichment through large stock purchases of 'Evine' branded stocks which was depleted shortly after Powell's resignation which quickly led to the resignations of its CEO Bozek and corporate counsel the following Sunday. Plaintiff Powell sought resolution and accountability with Evine after her resignation which was ignored after Powell was advised there would be a response shortly. This attributes to Evine agents being sued. Also, one board member has been 'co-branded' as a 'co-Father of the Year' with George W. Bush to convey Bush also may have control of that organization.

27. To date, the only failure to state a claim, specifically, has been regarding Mark Dayton and Adam Duinick who have been added in this pleading. Accordingly, it is alleged that both have coordinated their efforts against minor child Plaintiff within the definitions of 'RICO'. Mark Dayton has been associated with other defendants listed in the Verified Complaint, served as a U. S. Senator during George W. Bush presidential terms(s) and has consorted with 'JEB' Bush Sr. in Minnesota in such a manner to posture collusive activities against said minor child on December 2, 2015 which is when the San Bernardino shootings occurred and when the minor child received a threat from a resident of San Bernardino County, via email. There are allegations contained in the response to RTSC regarding how threats and collusions are committed and conveyed via third parties which are adopted by reference and restated herein. Adam Duinick's culpability is for collusion with Dayton and other defendants as Chairman of Metropolitan Council which administers transportation and Section 8 benefits. Immediately after Duinick's appointment by Dayton after controversially more than doubling Duinick's salary, Duinick promoted a transportation cost-reduction program to Section 8 beneficiaries

immediately prior to Plaintiff child was to begin commuting to Bloomington, Minnesota to attend college courses as a high school junior. The program was conditioned that participants' travel would be tracked and, in this case, constitutes stalking. The program was conveyed without a date affixed on the letter or on the machine-generated postage stamp. Tracking would have involved minor child's transfers in two counties, including being transported on all light-rail and buses. Since a recent visit to Minnesota by U. S. Attorney General 'Jeff' Sessions, Duinick has tendered his resignation. Under the direction of Duinick, rent was also over-charged outside Housing and Urban Development exemption standards. As to Mark Dayton, he has colluded with posturing threats in a form of stalking and has appointed judges, without any election, who have presided as 'gate-keepers' for counties skimming/stealing funds from federally-funded programs while also poising them for other types of cases. This is part of a collusive, 'RICO', program also evidenced through Broad and Cassel's and/or its agents' activities of mal-administrations of federally-paid funds while averting constitutional rights afforded to citizens and residents within their jurisdictions. There is a constant theme of depleting/diversion of federally tax-paid funds while disregarding constitutional rights; especially, basic human rights and the right to own property, such as land, oil and mineral rights. Paragraph one, subsection (7) on page 3 alleges 'that even the most skilled attorney would likely be unable to parse out allegations to fashion a response . . .' Plaintiffs alleges the U. S. Attorney should qualify under this description and it is asserted Sessions' recent visit to Minneapolis and two subsequent high-level political resignations evidences a clear understanding of Plaintiffs' writings and allegations conveyed to his office directly. Despite the local news speculating Sessions' appointment would be terminated very shortly after his visit, this has not occurred. It was reported during this time, Sen. 'Al' Franken (MN) has since asserted Sessions may have lied

during his confirmation hearing which Powell asserts is in retaliation for Sessions' effective visit. Additionally, Powell asserts Franken's suggestion may lead to an alleged justification for removing Sessions as the U. S. Attorney General, essentially, after properly performing his duties. On page one of the Order, it is stated that 'by no stretch of imagination would the Complaint enable any of the Defendants to file a responsive pleading . . ." Plaintiffs asserts sufficient clarification has been made within this document within the legal limits defined by federal rules and procedures and this court's local rules and this, together with the complaint hereby restated, stand.. The Verified Complaint was also written with the understanding that jurors, as laypeople, would better understand the facts and issues during criminal and civil proceedings. Except for required legal jargon which was necessary to properly depict general legal requirements of a federal Complaint which former President George Washington and all the authors of the U. S. Constitution would not even understand, Plaintiffs assert the Verified Complaint is far more relevant than a nuisance it apparently has been described through non-administration of a 'qualifying pauper's and its minor child' waiver of a $400 filing fee and costs of a jury trial and over-lapping judicial maneuvers to dismiss it while discrediting the mode while never alleging it is 'frivolous' which may be a legal basis for dismissal after reviewing a defendant's motion and timely response by a plaintiff: not initiated by a judge. As to citizenship, it is always established through principal places of business, legal residency (domicile), and state of legal registered registry with the offices of the Secretary of State (state) which was initially conveyed with the exception that Defendant General Electric's citizenship was in Connecticut and transitioned to New York during its activities involving the two Evine brands created immediately prior to and during Plaintiff's employment with its entities registered in Minnesota. They are not truly 'legal entities'due to criminal and fraudulent motives that were

the impetus of creating those entities which should be deemed 'void' as separate from those individuals involved with the creation of said fraudulent entities. Additionally, a declaratory judgment voiding those entities shall convey judgment rights against those entities and individuals which assets and individuals said entities sought to protect from overt and direct culpabilities. This result should affect another form of relief which is sought under the 'piercing the corporate veil' concepts (applicable to all legal and illegal entities and alter-egos, especially those which were created to financially insulate individuals from culpability for intentional criminal acts) which this amendment and supplement hereby establishes. Plaintiffs seek declaration judgments that equity owners shall be liable for losses created by co-equity owners, including those relating to marital estates. Plaintiffs seek declaratory judgments relative to agents, for instance those related with Broad and Cassel, P.A. and Evine Live, Inc., which evidence strategizing for judgment-proof results relative to activities involved herein. Plaintiffs seek a declaratory judgment that criminal strategizing occurred by individuals, especially Douglas E. Starcher, C. David Brown, II, J. Gary Miller, individuals and agents for Shutts and Bowen, Kurt O'Brien, individuals and agents for G. E. Capital and associations, individuals and agents for Akerman Senterfitt, Mark C. Bozek, Russell Nuce, and Tracy Marie Raiche Rothstein before and after employment of Plaintiff Powell, requesting that there be culpabilities especially declared for Plaintiffs regarding financial liabilities and declaratory judgments because of their intentional prior planning of activities which should lead to multiplication of liability awards in favor of Plaintiffs as having prior knowledge of causes of actions and disregarding same to intensify harmful events against Plaintiffs. Plaintiffs also seek declaratory judgments relative to foreign entities' assignments, sell-offs, and/or other deviation of asset ownership (partial and/or whole) which existed at the times of employments with Defendants, such as Simply Self Storage

and/or O. B. Companies and/or G.E. Capital (and its associations), as reversible and void due to the asset transference being predicated to protect said assets as being 'judgment-proof' for these purposes. Plaintiffs also declare transferal of assets to third parties and/or spouses be declared void to the extent said transfers were to create 'shell corporations' and other entities to create judgment-proof defendants. Said declaratory judgment is also sought regarding to any pending sell-off of assets, including G. E. Capital's, and Simply Self Storage's entities, agents, and affiliates to be void as illegal. The assignment of any assets from OOCEA shall also be reversible as void insofar as its alleged successor and/or assignee did not receive all assets and has not assumed all liabilities to third parties. As to any conveyance of rights, properties, assets (past, present and future) which have created actual or partial 'shell' entities, Plaintiffs seek relief and protections.

28. Plaintiffs amend and supplement to add relief is sought for compensatory and actual damages resulting from 'hate crimes' and other unethical, illegal and/or criminal acts committed against Plaintiffs. The 'hate crimes' relate to being a non-German Ashkenazi (aka nazi 'jewish' proponent, religion, gender, ethnicity, color of skin and/or other genetic identifying elements which involved employment decisions which led to harm of Plaintiffs. Additionally, Plaintiffs seek compensation for future expenses which shall be necessary to make Plaintiffs 'whole' in every aspect, i.e. financial futures, mental health, compensations for general losses of current and future health due to long-term stresses, intimidations, terrorisms, and other sufferings, and to repair self-concepts and concepts of others which was created as a baseline of Plaintiff's minor child during the majority of her existence as a result of poverty, prejudices organized against her ethnicity and color of skin due to a white-skinned preferential program, attending church services which are attacked by the 'nazi' movement as an expression of her religious

beliefs. Plaintiffs seek compensations due to suffering and experiencing debilitations and interferences created to harm and/or impair and/or stop Plaintiffs from rehabilitating from partial and entire losses.

29. Plaintiff minor child has experienced long-term pain, inflammation, insomnia, and utter inhumane disrespect by denials of treatment for diagnosed health problems and has experienced permanent physical harm by deterioration as a result of denial of treatments which have been denied due to non-employments which would have otherwise typically provided health-care as part of a compensation package. Said minor child has had recent medical opinions given which state the health problems will be more difficult to treat and there has been irreparable harm (entire deterioration) as a result of delayed treatments for a period of at least five (5) years in the state of Minnesota.

Plaintiffs seek compensation for future pain and sufferings relating to mental and physical reparation and/or the inability to attain relief from mental and physical pain and sufferings. Relief is sought regarding denial of access and/or fraudulent health care regarding both Plaintiffs as a result of being unemployed, long-term, including suffering and anguish from being treated inhumanely. This is regarding past, present and future.

30. Plaintiffs assert, if not for actions occurring which relate to Florida employments, unemployment, and non-employments in an equally compensatory manner as it relates to former employers Broad and Cassel, P.A., Miller, South and Milhausen, P.A., O.B.. Companies d/b/a and/or a 'Simply Self Storage' branded entity and/or entities, harmful events and actual losses would not have resulted and, therefore, Plaintiffs seek compensations for all consequential harmful events and losses which could not have occurred had Plaintiff remained legally employed with former listed defendants Baker-Hostetler, P.A., Broad and Cassel, P.A., 'Simply

Self Storage', Evine Live, Inc. (and brand Evine II) or had not been fraudulently employed by one or more of them, Miller, South and Milhausen, P.A.. Plaintiffs seek a declaratory judgment that alter-egos and related legal entities involved with employment of Plaintiff Powell are deemed null and void with respect to detrimental impairments against Plaintiffs' ability to seek full remedies. Plaintiffs also are seeking relief for the threats of repeated activities during subsequent employments and the manifestations of more retaliations and threats which occurred subsequent to employment with Broad and Cassel, P.A., 'Simply Self Storage', Evine Live, Inc., Miller South and Milhausen, P.A. and most recently their influence on a most recent fraudulent employment event which resulted in more posturing of threats, intimidations during said fraudulent employment and post-employment activities which clearly postured some Defendants' direct involvement and agenda. Plaintiffs seek compensation for conspiring with said recent fraudulent employer to create harm and retaliatory acts, including prolonging the denial of access to a compensation package which would give access to necessary healthcare and said fraudulent employment averting a compulsory waiting period for health care until such time real employment could be obtained without any interference of said fraudulent employer. Plaintiffs assert the fraudulent employer was solicited as a maneuver to obtain an extremely broad confidentiality and non-disclosure agreement in favor of 'Staples, Inc., Quill Corporation, its agents and affiliates' (undefined in particular) 'past, present and future' which includes fifteen (15) year genetic-core former Chairman of the Board Willard 'Mitt' Romney (former presidential candidate) and the current CEO, Shari Goodman, whose employment began on Donald J. Trump, Sr.'s birth date in 2016 and first anniversary is the date of the Virginia shooting in 2017 which was a 'three day tacit notice' of 'terminating' Powell which occurred the next Friday before an actual notice of dismissal from the fraudulent employment relationship the

following Monday morning. The post-(fraudulent) employment agreement overly broad and not exclusively relative to trade secrets, market competition, or other capitalistic endeavors and could also include all stock-holders. This was the second agreement presented to Plaintiff, the first was during a training session while insufficient time was given to read the content and was endorsed under duress. Donald J. Trump, Sr. met with Romney in New Jersey during the weekend of November 19, the anniversary of killing Joshua Hathaway, a former a co-university student of Plaintiff's which death was used to posture threats to Plaintiff while a student. This timing stimulated posturing to that event by Trump through his first nomination as an apparent president-elect, the Secretary of Education, Elizabeth 'Betsy' Voss, making an educational reference. Hathaway was co-murdered on George H. W. Bush's mother's death date and George W. and Laura W. Bush appeared on the 'Tonight Show' that same evening of the morning the Hathaway killing. Plaintiffs have endured deep anguish over killings being made relational to Plaintiffs as forms of threats and retaliations against Plaintiffs through killing others and creating deep grief in others due to those losses. This would include Michael Brown of Ferguson, Missouri where relatives of Bushes (Walker) are known to reside. Mr. Brown's name alluded to FEMA employee Michael Brown whose employment ended as a result of Katrina events. Mr. Brown's dead body laying out in the heat in front of his family and community members was an overt conveyance if the Bush criminal 'nazi' movement wants to have poor 'black' people rot in the streets like they did during the Katrina national crisis, they will do it and expect no criticisms from it, such a political dictator expects. Mr. Brown's birth date is the same as Powell's and his killing began a 10-day count-down to the annual threatening period against Plaintiffs from August 17 (Columba Bush birth date aka 'JEB' Sr.'s), 18, (Dorothy Bush Koch's birth date, daughter of George H. W. Bush) and 19 ('Bill' Clinton's birth date) at least since

moving to Minnesota. [Note: the customary ten-day count-down may be conveyed in a threatening manner via the cut-off dismissal date of this court's order of August 9, which ten-day will end on August 19 relating to 'Bill' Clinton's birth date, again – while removing an active federal case against several related defendants listed with Clinton. This is notwithstanding the July 25, 2017 order was held from being released in the mail at least until July 28, 2017. Furthermore, use of a ten-day count-down plus use of 'Bill' Clinton's birth date joins both George H. W. Bush, his affiliates with 'Bill' Clinton and his affiliates as they have done in the past to take co-credit for threats and activities against others. Powell believes references to 'wrestling' through events relate a 'tag-teaming' wrestling theme, especially due to Greenwich, CT being associated to the WWW wresting owner's domicile which is also the birth place of George W. Bush and former domicile of Prescott Bush and George H. W. Bush.] Powell, at the time of the Brown killing, was attending an on-line course with an Emerson employee who was faculty of Liberty University. Powell has not taken any courses since, primarily due to the intense factors of Brown's killing and the invasion into Powell's home and privacy via Liberty University's online program and home page. Emerson is head-quartered in Ferguson and Plaintiff's minor daughter was connected to this company through Chanhassen High School with an Emerson employee as part of a course requirement. There is an Emerson location approximately one (1) mile from Plaintiffs' home. The 10-day count-down is an identifying factor profusely used by George H. W. Bush to take credit for his treasonous activities due to it referencing NASA count-downs which are relative to his July 20 (landing on the moon – which is also referenced to George H. W. Bush via a recent appearance of his son, George W., on a Kimmel Live! program conveying more plans and threats against Plaintiff minor child on March 3, 2017, more fully depicted in a response to a Rule to Show Cause compelled by this

judge before his July 25, 2017 order of 'dismissal' which will be automatic so long as a response is not received by this court on or before August 9, 2017 after first withholding the release of the order for at least three (3) days from the date of said order of July 25, 2017 – see Exhibit "A" attached hereto and made a part hereof - and is an 'Apollo' referential preference of George H. W. Bush's. There was no 'one-day-less' adjustment of referential calculations which has since been applied to dates at least since February 2, 2015 when 'JEB' Sr. visited Minneapolis, MN and the San Bernardino shooting event occurred with a timed threat transmitted against minor child from a resident in San Bernardino County via Garry Cameron (IV or II) and possibly his paternal parent.

31. Plaintiffs assert a justifiable explanation for the length of the Verified Complaint has been conveyed and that any formality sought by this Court to cite separate counts is not regulated by the Federal Rules of Civil Procedures. Paragraph one, subsection (7) on page three alleges Plaintiffs seeks remedies from 'hundreds of defendants . . . 'which is an unethical and prejudicial exaggeration by this Court and also *clearly* libelous. Additionally, it is the responsibility of Defendants to convey their own legal defenses when they exist, not the court. It is the role of the Court to remain *impartial and fair* to all litigants as to the facts presented by those entities for the court's impartial review. Plaintiff only knows one other very lengthy initial complaint which was filed by a lawyer representing a widow of a victim who was killed on September 11, 2001 on the World Trade Center site. There had been a recusal sought due to the judge being a blood-relative of George H. W. Bush and his family. The recusal motion was simply ignored, giving no remedies in that case or appealable relief. Other than that case, Plaintiffs allege 'shot-gun' assertions by the Court, and not defendants, are levied primarily against *pro se*' cases or to dismiss organized 'RICO' cases. This is despite the law requiring

RICO cases must exist over a period of several years to be defined within that realm of offenses which would necessitate long criminal and/or civil complaints to capture the nature of activities, motives, and other proofs. To not convey facts, initially, risks a dismissal for failure to state claims clearly as well the matter being viewed as frivolous and possibly dismissed for that reason. Neither is an acceptable reason to dismiss pro se' cases, especially while issues could be severed by motions or agreement of parties to assist with the management of issues, such as regularly done with paid lawyers (who pro se' litigants cannot afford and, thereby, 'shot-gun' dismissals are prejudicial to the poor and low-income).

32. Barack H. Obama postured in a press conference in Iowa with 'mallets' hanging on a pegboard behind him. The date Obama appeared was used as threatening while the mallets referred to Defendant Mallett and his affiliates. Due to Joshua Hathaway's killing involving a 'hammer' which was later depicted as a 'mallet' in the investigative report dated on Chelsea Clinton's birth date, this would be the second time mallets were used symbolically and in a threatening manner to Plaintiffs. Afterward, Obama nominated Judge Strand for the district where the press conference was held whose congressional confirmation and other associative dates profusely projects he is meant to be a 'gate-keeper' for Obama relating to a treasonous movement, especially in the event that Obama was ever criminally charged for his activities within that venue. Judge Dalton has the opportunity to recuse himself should he recognize that any conflict exists. Plaintiffs believe their request remains unresolved and believes to appeal the denial to a higher court for review would become more prejudicial to the progression of this case, having already been denied on three (3) occasions from 'proceeding' timely, as stated heretofore. Plaintiff hereby adds emphasis to Plaintiffs *rights of recusal by reference to the bracketed [ ] insert contained in paragraph 30 in this document.* Plaintiffs hope fair and unbiased

adjudications can result despite these *very* apparent conflicts created first through a presidential and then by congress without the president first declaring existing potential conflicts of interest of which it was aware at the time of nominations and confirmations. This scenario gives rises to justification of judicial reviews under '*pro hac vice*' provisions which are normally afforded to citizens through state courts due to conflicts existing with district and county courts judicial officers. To not employ this as an alternative to conflicts would be a perpetual denial of access to due process, contrary to the Bill of Rights which emphasize the intention of the United States Constitution for The People. *Emphasis* is given that *pro hac vice* appointees shall not be an alter-ego for someone who presents a conflict of interest unless said conflict(s) are fully disclosed and consented to by parties.

33. Insofar as Plaintiff minor child is unable to represent itself as a direct result of activities against her, a declaratory judgment is sought in favor of its biological mother to represent it until such time it is able to do so effectively. Plaintiff Powell asserts much of the recent activities against her is related to create an intense fear and inability to testify and/or represent herself competently due to mental and emotional impairments created over a period of several years. Plaintiff Powell asserts activities against her biological child has been pervasive and grossly inhumane. In the event there is no legal precedence established for harming minor children intentionally and profusely over a period of years and awards being justified as multiplied by a factor of three to five times a basic award, Plaintiffs seek relief within this realm to identify prejudicial judgments will be intensely multiplied as a result of harming the basic foundations of understandings and identities of young people who will have to rearrange and unlearn their perverted reality for an extended period of their adulthood. Plaintiff Powell also seeks multiplied judgment award for her human-right to motherhood being exploited with her

minor child over a period of years, harming an ability to provide a secure and nurturing foundation for her minor child since being employed with Defendants. Plaintiff Powell asserts, on top of protecting the minor child from harm, it has had to rearrange ideas regarding the impacts those threats and attempts in a manner to try to create a sense of inherent respect and reliance upon a biological parent which a child should instinctively enjoy through-out a long and enjoyable livelihood. In the event that no legal precedence has not been established for harming the reputation of a parent through 'acts' which are illusive to print (libelous) and speech (slander), Plaintiff seeks punitive damages in the multiples that unspoken communication has been established to harm the reputation of Plaintiff Powell with its child (and others) which has intensified as the child has grown older. Plaintiff Powell seeks damages for breaking the maternal bond which was intensified through a close relationship between Plaintiffs, which intrinsic value should be respected as an 'intangible' valuable asset for punitive purposes and given a valuation for damages in favor of Plaintiffs in the multiples. Plaintiffs assert the 'childhood bond to its parent' shall be deemed an 'intangible' valuable asset for punitive purposes and given a valuation for damages in the multiples. Plaintiffs also assert the 'reciprocal bonded relationships between a child and parent(s)' are to be respected as an 'intangible' valuable asset for punitive purposes and seeks a multiplied valuation for damages due to the synergistic nature of love and multiplicative nature of future losses which are unquantifiable. In quantifying these types of damages, Plaintiffs seek particular damages for trying to destroy the 'only valuable asset left to Plaintiffs' after repeatedly destroying employment, employability of an established career field and other attempts to establish respected employment, comforts and security, losses of assets (sentimental and necessary), severing from emotional support networks

for both, and generally impairing any momentum in the pursuit of 'life, liberty and happiness' which is defined as protected through the U. S. Constitution.

34. To the extent that Plaintiff minor child cannot competently pursue damages and/or relief and remedies at an age prior to 21 years and/or the completion of post-secondary education(s), whichever is later, a declaratory judgment is sought to toll any statute of limitation until after Plaintiff reaches 21 years or completes her post-secondary studies, whichever is later. This is in the event that Plaintiff's mother is unable to administer her rights and interests in this case.

35. Plaintiffs request any dismissal and/or judgment in this matter shall affirmatively state it/they are without prejudice regarding Plaintiff minor child, until such time after a statute of limitation has expired after beginning at the age of 21years or the completion of her post-secondary education(s), whichever is later.

36. If Plaintiffs seek a declaratory judgment that any death of either Plaintiff or both, during this proceeding or afterward, shall not result of any enrichments to any named defendants, directly or indirectly, due to their fraudulent involvement seeking personal protections and ultimate enrichments relating to the planning of the death(s) of Plaintiff(s), especially Plaintiff minor child first and then Plaintiff Powell. To not allow this form of relief would make the 'judgment-proof' involving a 'refund' program and more of an incentive to harm one or both Plaintiffs.

Plaintiffs request these amendments and supplements shall sufficiently address deficits sought to be cured through this court's Order dated July 25, 2017 and that this matter may proceed under a normal course of due process afforded by the U. S. Constitution and Bill of Rights, including for those who are poor and/or low-income and appear pro se' and through

others more skilled than they are to administer their legal interests due to some type of 'incompetency' relating to access to due process rights.

Due to no service being allowed by this court to be affected on any defendant by Plaintiffs up to this point, Plaintiffs assert immediate service of this instrument on any Defendant is inapplicable, now, and a Certificate of Service is not necessary.

This 8 day of Aug, 2017.

PAMELA POWELL, Indv. and obo of G.B.J.H.,
her minor child, Pro Se'
721 Lake Susan Drive, #309
Chanhassen, MN 55317
(952) 457-3268