FILED

2017 AUG 24 PM 1:08

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PAMELA POWELL, Indv. and on behalf of
G. B. J. H., her minor child

VS CASE NO. 6:17-CV-528-ORL (Dalton)

C. DAVID BROWN, II, Indv; WANDA LEIGH BROWN, Indv.; C. DAVID BROWN, II, P.A., as partner of BROAD AND CASSEL, P.A.; ROBERT FRANKLIN MALLETT, Indv; ROBERT F. MALETT, L.L.C. as partner of BROAD AND CASSEL, P.A., ISAOA, DOUGLAS E. STARCHER, Indv., DOUGLAS F. STARCHER, P.A. as partner of BROAD AND CASSEL, P.A., ISAOA; BROAD AND CASSEL, P.A.; J. GARY MILLER (NKA JAMES G. MILLER AKA JAMES GARY MILLER, JR.) Indv. and as partner of former MILLER, SOUTH AND MILHAUSEN, P.A., nka SOUTH MILHAUSEN, P.A..; MILLER JOHNSON LAW, P.L.; JEFFREY P. MILHAUSEN, Indv. and as partner of former MILLER, SOUTH AND MILHAUSEN, P.A. nka SOUTH MILHAUSEN, P.A.; ANGELA D. SHAW, Indv. and as former partner of MILLER, SOUTH AND MILHAUSEN, P.A. NKA SOUTH MILHAUSSEN, P.A., as a former Associate Lawyer of BROAD AND CASSEL, P.A. and currently as Of Counsel for BROAD AND CASSEL, P.A.; MORRIS E. OSBORN; STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION; ORLAND-ORANGE COUNTY EXPRESSWAY AUTHORITY,

ORANGE COUNTY EXPRESSWAY AUTHORITY, ISAOA; IRA WILLIAM 'BILL' MCCOLLUM, JR. aka BILL McCOLLUM, Indv.; SCOTT MAXWELL; ORLANDO SENTINEL COMMUNICATIONS COMPANY, LLC as successor to ORLANDO SENTINEL COMMUNICATIONS COMPANY; A. H. BELO CORPORATION dba DALLAS MORNING NEWS; JOHN ELLIS BUSH aka 'JEB' BUSH; GEORGE WALKER BUSH; WILLIAM JEFFERSON CLINTON aka BILL CLINTON fka WILLIAM JEFFERSON BLYTHE, III; GEORGE H. W. BUSH; SHUTTS AND BOWEN aka SHUTTS AND BOWEN LLP; KURT O'BRIEN; GENERAL ELECTRIC COMPANY, GE REAL ESTATE CORP and GE REAL ESTATE dba OB COMPANIES; SIMPLY SELF STORAGE, LLC dba OB COMPANIES; OB COMPANIES, LLC; OB DEVELOPMENT CO., LLC, ISAOA; OB MANAGEMENT SERVICES, INC., ISAOA; O.B. MANAGEMENT SERVICES, INC.; GENERAL ELECTRIC COMPANY; GE REAL ESTATE as subsidiary of GENERAL ELECTRIC COMPANY; GENERAL ELECTRIC CAPITAL REAL ESTATE, as subsidiary of GENERAL ELECTRIC COMPANY; BROOKFIELD ASSET MANAGEMENT through BROOKFIELD STRATEGIC REAL ESTATE PARTNERS II FUND as a successor of SIMPLY SELF STORAGE ACQUISITIONS, LLC; KURT O'BRIEN, Indv. and as partner/manager of O.B. COMPANIES and/or SIMPLY SELF STORAGE; JESSICA M. WOLF O'BRIEN, Indv; KYLE ALLEN SCHMUTZLER; JASON JACOBSON; DEBRA A. HANLEY; O.B. COMPANIES and/or SIMPLY SELF STORAGE, operating under a fictitious entity and ISAOA; O.B. MANAGEMENT SERVICES, INC., operating under a fictitious entities, ISAOA; O.B. DEVELOPMENT SERVICES, INC., operating under a fictitious entity, ISAOA, and equity owners, Indv; O.B. DEVELOPMENT COMPANY, LLC, an Indiana corporation, operating under fictitious entities registered as foreign entities in Florida, ISAOA, and equity owners, Indv.; SIMPLY STORAGE DEVELOPMENT,

.NC.; SIMPLY STORAGE MANAGEMENT, LLC, ISAOA, GE CAPITAL, AKERMAN, SENTERFITT & EIDSON, P.A., ISAOA, fka AKERMAN SENTERFITT nka AKERMAN LLP, ISAOA, LIBERTY UNIVERSITY, INC. AND ANY EQUITY OWNERS; JERRY FALWELL, JR., ROBERT MULLEN, SHENANDOAH BAPTIST CHURCH; VALUEVISION MEDIA, INC. fka SHOPNBC, fka SHOPHQ, nka EVINE LIVE, EVINE; EVINE II; EVINE Live, Inc. dba EVINE LIVE, EVINE LIVE II and EVINE; COMCAST CORPORATION fka COMCAST HOLDINGS; CLINTON GROUP, INC.; CLINTON RELATIONAL OPPORTUNITY MASTER FUND, L.P.; CANNELL CAPITAL LLC; VALUEVISION MEDIA, INC.; VALUEVISION RETAIL, INC.; VALUEVISION INTERACTIVE, INC.; VALUEVISION MEDIA ACQUISITIONS, INC.; VALUEVISION INTERNATIONAL, INC.; VALUE VISION INTERNATIONAL, INC.; MARK C. BOZEK; RUSSELL NUCE; ROBERT 'BOB' ROSENBLATT; LANDEL CLAY HOBBS; STACEY R. TRUSSONI; TRACY MARIE RAICHE ROTHSTEIN; MERSIHA DEMIROVIC; WAYNE HENRY; CENTURYLINK, INC. fdba CENTURY TEL; ASF RADIO, L.P., as successor of GE CAPITAL EQUITY INVESTMENTS, INC., GENERAL ELECTRIC COMPANY, and GENERAL ELECTRIC CAPITAL CORPORATION; NBCUNIVERSAL MEDIA, LLC, successor of NBC UNIVERSAL, INC.; NBC UNIVERSAL; PRESCOTT GROUP CAPITAL MANAGEMENT L.L.C.; PATRICIA SHUSTER as a non-probated heir of JOSEPH M. SHUSTER, SIRI ANN SHUSTER LEHMANN; THOMAS E. LEHMANN; ESTATE OF JOSEPH M. SHUSTER; PETER WALLACE SHUSTER; SUSAN SHUSTER KING; LAEL KING; ELECTRONIC CONTROLLED SYSTEMS, INC. dba KING CONTROLS dba KING; LAURA KELLY, Indv., EXECUTIVE DIRECTOR OF CFX fka CENTRAL FLORIDA EXPRESSWAY AUTHORITY as successor of ORLANDO-ORANGE COUNTY EXPRESSWAY AUTHORITY; RICHARD LYNN 'RICK' SCOTT, Indv.; and ROBERT LEE. DIETZ,

Indv., LAURA DIETZ, Indv., ZIMMERMAN, KISER & SUTCLIFFE, P.A., ISAOA

Second First Supplement and Amendment to Verified Complaint
(Per order dated August 10, 2017, post-marked August 14, 2017)

AND

NOTICE OF VOLUNTARY DISMISSAL
(WITHOUT PREJUDICE), PURSUANT TO F.R.C.P. 41(a)(1)(A)

Plaintiffs appear to state the following:

1. On March 24, 2017, this matter was filed without allowing the Plaintiffs to proceed *in forma pauperis* and was prohibited endorsed summons for service by mail upon all defendants during this time despite the case being indexed as filed, assigned to a judge with a case number, plus a restrictive eighteen (18) month order to reach final resolution had been issued by a former two-decade partner (approximately) of Defendant Akerman Senterfitt, in lieu of issuance of a voluntary recusal, Magistrate Kelley. This is notwithstanding Plaintiffs depicting in a *verified* pleading that an Akerman partner self-described itself to Plaintiff Powell as a close personal friend with other Defendants and is primarily involved in core events involving "RICO" activities against Plaintiffs. According to the record, no deficiency existed with regard to the motion to proceed *in forma pauperis* while the case lay dormant and while the eighteen (18) month period was expiring without Plaintiffs having access to administer their case within the legal definition of the Federal Rules of Civil Procedure and local rules of this district.

2. Plaintiff was advised by Judge Sharp's staff that the Court had up to six (6) months to rule on the motion to proceed *in forma pauperis*. As a former supervisor in a federal court, this standard is grossly negligent, if true. Despite Plaintiffs qualifying for a waiver of the civil filing fee as low-income or no-income litigants, the $400.00 filing fee was paid in full in order to proceed in the case within sufficient time allowed by Magistrate Kelley.

3. Plaintiffs sought redaction of personal information depicted in the motion to proceed *in forma pauperis*, said request is customarily complied with as a normal course of business, which was also denied. This depicts lack of respect of constitutionally-protected privacies of personal financial information required in the motion and of minor children, generally. Magistrate Kelley also has demanded parties to affix several pages of the initial caption, defying parties' right to use an abbreviated, simple, caption of the first plaintiff and defendant as its caption.

4. In addition to Magistrate Kelley's conflict-of-interest with defendants through his prior co-associations with Defendant Akerman-Senterfitt, ISAOAs, Plaintiffs requested a voluntary recusal of the second assigned judge (transferred from Sharp and reassigned to Dalton without any notice of any order, contrary to the Federal Rules of Civil Procedure), while giving insights into Dalton's close former employment co-association to a former cabinet appointee of Defendant George W. Bush at the same firm at the same time, i.e. Secretary of the Department of Housing and Urban (HUD) Development, 'Mel' Martinez (whose name is an alias from Melquiades Raphael Martinez Ruiz). Plaintiffs' verified complaint depicts facts involving mal-administration of HUD benefits as part of a 'RICO' potential claim against a local Section 8 office which is governed by the U. S. Secretary and that Department. Martinez (Ruiz), who is Cuban-born, left as a senior, founding named partner with Dalton of their co-business, 'Martinez, Dalton, Dellecker and Wilson' and there is a Martinez in the local region whose son's first name is 'Dalton' which supports political and personal intense relationships have existed between Martinez (Ruiz) and Dalton for decades and may be intermarriage-related fostering more expected commitments of protecting personal interests. These obvious conflicts warranted a recusal by the illegally undocumented transferee of this case which generated internal judge-shopping after the first judge had been randomly assigned in accordance with laws. All these activities, Plaintiffs believe, gives rise to allusions to treasonous activities by this court, including the denials relating to protecting Plaintiffs' privacies which is customary for all civil courts to do so. This concern is heightened by the knowledge that the former Clerk of Court was 'transferred' into another floor of the federal building of this court as the Bankruptcy Clerk of Court while her successor shares the same name as a presidential candidate from Massachusetts and the former Clerk of

Court being primarily involved in an international Clerk of Court association which uses a Dutch/German windmill, depicting involvement of a treasonous movement to benefit Germany at the detriment of tax-payers, residents and citizens of the United States of America. It is also noteworthy another former Clerk of Court's name is 'Dan' Luther, a prominent German name which aligns with German and Ashkenazi 'nazi' preferential activities against the United States of America while extorting tax-paid salaries and prohibiting bona-fide judicial agents administering access to due process rights as defined in the amendments of the United States Constitution and related judgments. There are no judicial immunities for not performing duties described as a condition for employments through sworn appointments: only for judicial 'activities' which are not criminally motivated and/or collusive. Plaintiff is aware any criminal prosecutions for activities involving this court would be averted by the continuation of this case until after it is finalized due to said activities being 'ongoing'.

5. It is clear the Court is aware that ''RICO'' (more fully defined in previous pleadings) cases require organized, systemic activities of at least ten (10) years since before 2002 and that a substantial burden of proof is required far beyond most any other type of civil action filed in United States federal courts. This defies any ability to make 'short and plain' statements while activities are protracted and complicated with a standard to prove continuity and relatedness of said activities. Paring the initial pleadings to become 'brief and simple statements' would be tantamount to the Court pandering for Defendants' successful Motions for Summary Judgments for failure to state claims or other motions seeking clarity of facts and ultimately for successful directed verdicts against Plaintiffs after the Court has employed more multiple suppression of testimony tactics during the jury trial phase if this action may ever be able to progress onto service upon defendants without the effect of the July 21, 2017 sixty-eight (68) summonses' powers expiring before service [sixty-two (62) dated July 21, 2017 and six (6) more dated July 24, 2017 before the case was immediately stopped from sending out service due to the July 25, 2017 being allegedly signed one day later], creating another delay prejudicial to the eighteen (18) limits created, unnecessarily prejudicially against Plaintiffs, by Magistrate Kelley (who was a 'share-holder/partner with Defendant 'Akerman' during *two* decades) without first allowing the *in forma pauperis* filing fee waiver by an Order

despite apparently qualifying for one. Plaintiff Powell believes Sharp's transfer to 'Skip' Dalton, the nickname 'Skip' is meant to define the mal-administered, prejudicial biased agenda during denials of access to due process in a timely, unbiased, ethical and truly legal manner in this case which cannot be traditionally described as an 'action' due to activities employed by this Court to ensure inactions – including the actual 'inaction' that the case was filed fraudulently and effectiveness subject to be judicially challenged, even after eighteen (18) months of arduous apparent activities of affecting service, filing pleadings, generating discovery, and even an expensive, judicially challenged jury trial. These tactics are typical in Minnesota via non-elected, gubernatorial (dictator) *non-elected* appointments to the bench by Gov. Mark Dayton who also has colluded with Defendants in Minnesota against Plaintiff minor child with the Minnesota domiciled Shusters and Lehmanns which collusions Plaintiff believes will be able to establish a *preponderance of evidence* of relatedness to "RICO" activities involving Bush/Clinton defendants and all other defendants including involving Florida, Minnesota and Massachusetts related activities and Florida activities, directly and other venues indirectly – respresenting diversities attaining proper jurisdiction in this Court's venue. This should not be any surprise to the Court, due to the number *and similarity of types* of defendants cited in the Verified Complaint and the length of time activities have ensued against Plaintiffs, detrimentally, or meant to be very detrimental had they been fully accomplished. This Court complains of an inability to 'understand' sworn statements contained in the secretly and illegally filed pleading without first receipting a filing fee or Order to waive same, in the Verified Complaint on March 24, 2017. Said secret filing involving a secret, non-ordered transfer from Sharp to Dalton while no notice of filing was given to Plaintiffs during a long period during which Plaintiffs experienced a reasonable understanding, since no payment was made by them or an Order was issued (filing the Verified Complaint nunc pro tunc to the receipt date stamped on the Verified Complaint sustain a receipt-dated filing date, retroactively). In the 'won't back down' fashion, the Court has unified itself with several defendants, if not all, in their "RICO" activities by exploiting and creating economic hardships related to their impoverishment while forcing payment of a relatively high filing fee (the court did not allow installments or partial filing fees) if Plaintiffs wanted to proceed with their case. Plaintiff Powell

alleges the 'skipping' transfer supports this Court has knowingly and fraudulently receipted funds while making implied warranties it would release Plaintiffs to have their case administered without biases, said payment has only resulted in the fair administration of summonses which this Court has already made void through its dismissal of the Verified Complaint before its August 10, 2017 fraudulent and void Order of that date. Plaintiffs gives emphasis to the Court languishing over any review of Plaintiffs' request to file the case without payment of a $400 filing fee over several weeks while it stalked the August 9, 2017 responsive date given by the July 25, 2017 to issue its August 10, 2017 Order memorializing i) dismissal of the Verified Complaint, ii) dismissal of its first supplement and amendment, and 'dismissal' of a request for a judge who has not been presidentially nominated and congressionally appointed after stalking it during the issuance of summons to administer an Order one day after the last summons was endorsed by the Clerk's staff member(s). It is important, also, to note the 'dismissal without prejudice' seeks to 'neutralize' the heavy-handed and fraudulent attempt of the Court to amend its July 25, 2017 to cite an impending dismissal would be 'with prejudice' while the neutralizing tactics evaded that ruling from an interlocutory appeal under Rule 54(b) of the Federal Rules of Civil Procedure. This precision of evasion of accountabilities makes this Court's culpabilities as criminal, especially due to the lengthy disclosures made in the complaint in three pleading, including the Response to Rule to Show Cause. Plaintiffs also assert Magistrate Kelley had been in collusion with others, criminally, through his non-recusal.

6. It is also clear the Court is aware that Plaintiffs have a protected right to length of pleadings and pro se' litigants have unique privileges due to the untrained nature of represented themselves. Plaintiffs have made it clear it has averted multiple cases being filed and consolidated (and unattainable multiple filing fees paid by them) as a result of filing its initial verified complaint. In that complaint, jurisdiction, venue, and cited remedies were conveyed. Despite the Court complaining the pleading was too long (a subjective assessment), it also complained it had not met required standards for filing. Plaintiff, as stated before, paid the civil filing fee, submitted the required civil cover sheet, properly captioned the pleadings, composed it in double spaced paginated pages, dated and signed the document and otherwise conformed to Federal Rules of Civil

Procedures and local rules. Jurisdiction and venue was established in the original document which also depicted citizenship of all parties to the best of Plaintiff Powell's knowledge. Plaintiffs ultimately submitted prepared summons (and prepared Acknowledgements of Service by Mail) which were endorsed by the Clerk on July 21, 2017 which appears to have triggered the two Orders for dismissals on July 25 and August 10, 2017. Dalton's intervention of Plaintiffs'legal right to proceed with service of summons dated July 21, 2017 and July 24, 2017 through service by mail by his July 25, 2017 Order is to prompty affect his protections for Defendants due to their inability to deny its activities, according to a 'treasonous' tenet and part of its obvious creed, which would quickly lead to his involvement in the issuance of Default Judgments in favor of Plaintiffs as a result of Defendants' failure to answer said initial pleading within the proscribed after twenty-one (21) days of service of the Verified Complaint, as supplemented and amended. To do so would sever Defendants publicly from a unity with those who never denied their actions to stay within the integrity of its illusive program. However, this was not pre-ordained through the Bush/Kimmel television segment which depicted emphasis on i) a Hispanic – including one who was sketched as small; ii) attorney Whittington's shot-gun shooting by a Bush executive branch appointee and iii) the Holcombe author – all of which will be more particularly explained heretofore in this document (which should be considered with the Response to Rule to Show Cause already filed). The non-issuance of an *in forma pauperis* order, Rule to Show Cause, and two Orders have immediately stalled any ability to affect service of summonses upon defendants – all after Plaintiffs had taken new action to try to do so, (i.e. submission of the Verified Complaint, payment of the fee, having summonses issued), all which have been averting Plaintiffs receiving responses, submitting Motions for Default Judgments and affecting publicly recorded Writs of Seizures and/or Garnishments, and pursuing pre-trial discovery avenues to maximize the residual period of a mandated eighteen (18) month period to finalize matters with those who had filed denials in their Answers. This is notwithstanding the Court proceeding *outside legal authorities* by filing the case *without any filing fee tendered by anyone (beginning a four-month period toward dismissal for lack of prosecution, pursuant to its own local rule without first advising Plaintiffs the case had been i) filed and ii) quietly transferred from one judge to another)*

*or waived by an order.* Plaintiffs allege relentless abuses of powers in this case and fraud predicated with obvious conflicts of interests which should have resulted in recusals by Kelley and Dalton seeking to be detrimental against Plaintiffs' due process rights.

7. All pleadings filed heretofore convey clearly there has been ongoing fraud of at least two acts by all defendants over a period of ten or more years, as prescribed by 'RICO' civil cases. The Court sought record 'expungements' of the verified statements in the Verified Complaint, in actuality, through a demand to 'replead' the case. In lieu of this, giving valid reasons relating to safety and protection, Plaintiffs filed a supplement and amendment conforming to the necessity to cite citizenships despite citizenships being clearly depicted and enumerated in the original pleading. This is clear evidence of abuses of powers and protracting abuses against Plaintiffs' legal rights and resources. As pro se' litigants, legal domicile of individuals had been conveyed by showing their addresses and legal citizenship was conveyed through showing addresses of principal places of businesses. Plaintiffs assert this requirement was contrived to dismiss the case; however, the Court failed to mention his intention was to permanently foreclose Plaintiffs' access to due process rights afforded by the Bill of Rights. As a result of Plaintiffs making a distinction of dismissals 'with' or 'without prejudice', this Court was reminded his attempted foreclosure was legally inadequate which has led to subsequent order dated August 10, 2017 (post-marked August 14, 2017) alleging it was conveying a right to Plaintiffs to conform to its demands by August 24, 2017 after again withholding conveyance of an order for at least four (4) day of an actual ten-day period response time to file a respond from Minnesota where Plaintiffs reside, having been domiciled in Florida while many events occurred by several core Defendants before fleeing Florida by necessity. As in the past activities and non-activities, these tactics has intensified economic hardships, in concert with Defendants, against Plaintiffs by requiring expensive overnight deliveries to meet cut-off dates which were predicated by the Court obviously withholding delivery for a documented four days and concurrently prejudicing response by excluding those four (4) days in violation of Rule 6 of the Federal Rules of Civil Procedure depicting calculation of time being forthright and overtly evidenced on the face of documents, always excluding the date of said instruments. Withholding the delivery of orders after being entered on the docket also violates requirements that they

are released no later than the same day the order entered on the docket which is the day before calculation of time begins which would carry-over weekends and holidays if the time ended on such. The Court has also suggested Plaintiffs attend a 'clinic' in Orlando, residents of Minnesota, to help cure alleged deficiencies. Additionally, in a very prominent 'shot-gun' pleading case against the Los Angeles Police Department, that Court allowed more than one-hundred (100) new plaintiffs to *amend their pleadings within a period of forty (40) days*. Plaintiffs allege this Court's grossly short initially declared period which *now generally includes week-ends and holidays* since Rule 6 was amended in 2009, plus the Court being advised of a prior withholding of transmission of four (4) days of the July 25, 2017 order depicts a 'won't back down' mentality of a treasonous movement which profusely implies through involvements by this Court if all had US citizenship and none other citizenship option, such as through both parents being citizens of a different country. There is no real legal purpose of issuing an expedient dismissal order without prejudice after first eroding the responsive period for a 14-day order substantially (29%), other than to protect all listed Defendants *permanently* and *promptly* after first changing the federally-mandated short-form caption to protect C. David Brown, II as the first listed docketed defendant, perpetually, who is the CFO of 'Broad and Cassel', P.A. during all times herein while administering the state-wide offices' financial matters from Orlando despite all other administrative features being from another site in a different city in Florida. At all times herein, Brown was the partner to which 'OOCEA' and other government agencies were attributed as 'his accounts' and were due to his personal relationship with Defendant, John Ellis 'JEB' Bush, Sr. before and during his governorship in Florida. Plaintiff Powell asserts the only 'second chance' that exists, allegedly was to allow an opportunity for the Court to correct its July 25, 2017 order which omitted a 'with prejudice' clause which distinctions were addressed by Plaintiffs' First Supplemental and Amendment to Complaint which this Court has administratively expunged from recorded relevancy through a 'dismissal without prejudice' cited on August 20, 2017 *while seeking to permanently annul* due process rights afforded to Plaintiffs, by law, regarding the sworn statements contained in the Verified Complaint, et seq. illegally filed by the 'new' Clerk, Elizabeth Warren, on March 24, 2017. Plaintiff Powell was fraudulently employed by a company which has a

parent company which primary place of business is in Massachusetts from where presidential candidate Elizabeth Warren came into that presidential national media spotlight, especially while being considered for the Vice Presidential candidate for a Clinton and any alter-egos related to relationships. Plaintiff Powell was domiciled in Minnesota during this fraudulent employment and was led to believe the employer was domiciled in Illinois while many evidences showed it is domiciled in Massachusetts. [Concurrent with pre-employment manipulations, posturing was conveyed for Plaintiffs to leave the state.] This particular potential candidacy and later attachment depicts Plaintiff Powell's and her child's lives being fraudulently managed from Massachusetts and would be done so through this Court with the same organized nuances for posturing overtly and boasting through its new Clerk of Court sharing substantially the same as the Vice Presidential candidate. Plaintiff asserts the new clerk is to posture angst against Powell for averting Hillary Clinton from being elected which would enjoy husband/wife immunity from being compelled to testify against each other in criminal matters and would facilitate a natural and trellising communication chain amongst Defendants Bushes her husband as an 'adopted' son of a different mother' per George W. Bush. The fraudulent employer's and/or parent company was founded by a company with which former presidential candidate Willard 'Mitt' Romney worked before becoming the parent company's Chairman of the Board for fifteen (15) years before shortly thereafter entering into politics, publically, via state and federal positions. Additionally, illegally filing the case would allow opportunity for a defendant to allege lack of jurisdiction at any time for failure to meeting minimum standards for filing this civil action. This Court's most recent activity purely defies Rule 41 of the Federal Civil Rules of Procedures *without a court order* with regard to rights of access to voluntary dismissals while complaints have not been served upon any parties without mentioning this as an option to remedy the alleged defective pleadings to capture more time to properly comply what the Court purports to accomplish. This biased omission is overt "RICO" activities which serves the Defendants' interests since said dismissals allowed under this rule are *without prejudice, allowing Plaintiffs to resume efforts to seek remedies later than a fraudulently alleged fourteen (14) day which is actually no more than a ten (10) day period which generally includes weekends and holidays due to the Court failing to release orders for*

*transmission for a documented four (4) days (29%) and perhaps more days which are undocumented withholding after the post-marked date.* Plaintiffs have not sought any 'second chance' and, as such, any dismissal should be without prejudice automatically for failure to comply with the July 25, 2017 order and any subsequent order is without jurisdictional authority of a dismissed case. Due to the typical, basic knowledge of Voluntary Dismissals being without prejudice, it is obvious this Court is attempting to thwart legal due process rights which are already protected by Rule 41 of the Federal Rules of Civil Procedure which provides unlimited access to filing another Complaint against any or all Defendants in this or any other federal court so long as the United States Constitution is in full effect for all united states and territories involved in this cause of action.

8. Additionally, as a former supervisor and co-author of docketing procedures in two federal court jurisdictions, Plaintiff asserts it is not an extraordinary event to docket (affect the timely order docket entries which begins to calculate toward appeal filing deadlines) and mail orders on the same day, in compliance with established rules of procedures at that time, prior to releasing same with sufficient postage affixed thereon. Said non-administration of both orders for a fraudulent responsive period is criminally related to incrementally annulling the U. S. Constitution as part of the treasonous movement which seeks to annul the U. S. Constitution, *en toto, while incrementally doing so as tax-paid imposter employees divert obligations conveyed to their positions to protect human and civil rights defined in the U. S. Constitution which are conveyed more elaborately over a period of more than 200 years through amendments and refinement of judicial decisions. Plaintiffs assert imposing treasonous agents into tax-paid positions is to avert the intended purposes of taxes which are to fully protect of our democracy and serve all people residing in within its united states and territories equally and not to selectively protect and serve treasonously-related participants.* It is also extraordinary this 'court' does not depict the date of entry of its orders, as mandated by law, which is used to convey the beginning calculation of time for appeals. Omission of this administration function is prejudicial to parties against whom rulings and orders have been levied by an elicit erosion of time to file appeals which occur between signing said

instruments and entry on the docket which *also mandates* the date of entry is the date of depositing said instruments in the mail for deliveries.

9. In addition to these activities, during the interim, the Court issued a Rule to Show Cause why the case should not be dismissed for lack of prosecution. Plaintiffs also timely filed a responsive pleading, explaining the court had stopped any ability to proceed while withholding the motion to proceed *in forma pauperis* decision while it sought to dismiss the case pursuant to a local rule requiring that service proceed within four (4) months of filing. [Note: any administrative dismissal which was reported, statistically, to the Federal Judicial System would have been an extraordinary closure which should have led to be questioned by it which would have led to a broad investigation of mal-administration of cases being peremptorily dismissed without merit.] Plaintiffs allege this Court has not only strategized to protect criminal activists involved in anti-U. S. Constitution agendas, it has persistently and intentionally sabotaged Plaintiffs ability to prosecute its rights of access to judicial relief via a review by a jury and not fully controlled from the bench by presidential, life-long judicial appointees, if not first incarcerated for criminal conduct before their natural expirations of appointment.

10. Due to this Court's persistent aversion to administering this case being so intense it has intensified its activities to dismiss the case 'with prejudice', having already been advised by Plaintiffs there is no legal right to limit length of complaints. This court has made disparaging, insulting remarks in its order and yet has taken the lead of Plaintiffs to make a distinction between a type of dismissal to which they are entitled.
FURTHERMORE, Plaintiff Powell alleges George W. Bush directed this Court's agents to illegally engineer a 'shot-gun' allegation and dismissal during a scripted dialogue on March 2, 2017 (erev March 3) which was televised on Kimmel Live! while sharing laughter about former Vice President Cheney's 'shot-gun' victim during a Texas hunting trip with lawyer Whittington who later made an indirect reference to Blue Sky Laws with him being shot with a shot-gun. Accordingly, Plaintiff Powell definitely has sufficient reason to believe knowledge of the lengthy drafting of the complaint was occurring at the time of that program and it would be filed in the Orlando Division in the Florida federal court. Plaintiff believes there is convincing testimonies and evidence which could be

conveyed to criminal and civil jurors regarding these influences. Details of this scripted appearance is more particularly discussed in the Response to Rule to Show Cause filed in this case by Plaintiffs and said appearance may be viewed by the public on the internet. Powell alleges peremptory defenses have been employed for defendants by Kelley and Dalton (with their clerks, plus whomever withheld release of deliveries of both orders for at least four (4) days as judicial agents who should have recused themselves due to this exact type of relationship with the Bush/Clinton family and their alter-ego, murderous and conspiring associates. The Kimmel/Bush, entirely, depicted how the instant case would be annulled and/or disposed of the same month it was alleged it was 'filed', assigned a case number and two (2) judges and one (1) magistrate all bearing conflicts of interests with primary Defendants.

11. Plaintiffs allege allegations are adequately enumerated, contiguous in chronology as best as possible, grouped by relatedness while tying events to "RICO" events, conceptually, and they conveyed *all basic legal requirements* for original pleadings, despite its length which actually averted filing multiple cases, paying multiple filing fees or obtaining multiple *in forma pauperis*, administering multiple case-management tracking, turning the Powell home into a legal boutique of prolific litigation which would ultimately seek to consolidate all of the cases. Plaintiffs alleges illegal obstruction of justice via impairing any right to serve complaints (original, supplemental and amended) upon defendants is due to a threat that at least one Defendant will open-up about the "RICO" enterprising which will lead to a general failure of treasonous activities which have ensued for a protracted period and criminal prosecutions for same, conspiracy to commit murders of Powell and the minor child, and actual murders. Disclosures may particularly be due to the murder attempts made against Plaintiffs which transcend beyond the civil liabilities. In all instances, many movement members realizes feeling 'shame' will bring God's wrath against them and all judicial abuses of powers and obstructions of justice are primarily designed to factually preclude this from occurring after service upon certain Defendants occur. Plaintiff Powell alleges obligations 'to adequately link causes of actions to factual predictates has been met. Furthermore, Dalton's allegation in the August 10, 2017 non-jurisdictional Order *illegally* states Plaintiffs' responses to his July 25, 2017 Order were merely clerical corrections and not

substantive to responding to the first order (while dismissing it) despite Plaintiffs having to complied to help the Court 'make sense' of the facts through amendments and supplemental facts. Through the Court's tactics, it has prompted Plaintiffs to broaden allegations of jurisdictional causes of actions for which it is entitled to reliefs.

12. As to 18 U.S.C. § 1961 related civil remedies, Powell alleges the racketeering period includes obstruction of justice to cover-up thefts from tax-payers through Defendant Orlando-Orange County Expressway Authority, Robert F. Mallett, any alter-ego of his, Defendant McAuliffe, Defendant Clinton, Defendants Bushes due to alter-egos acting on their behalf, 'Broad and Cassel', P.A. and cover-up activities by C. David Brown, II and Douglas E. Starcher, and their legal alter-egos to further cover-up activities during Powell's employment with them. Powell asserts Defendants, 'Shutts and Bowen' and Shutts and Bowen LLP, its agents; Simply Self-Storage, its agents; Miller, South and Milhausen, P.A., ISAOA, and agents, Defendant Angela D. Shaw 'Shaw' who was/is overtly co-affiliated with *three Defendant law firms*, Akerman LLP, a successor of Akerman Senterfitt 'Akerman' at the time of an 'interview' shortly after Powell made disclosures to the Tampa Federal Bureau of Investigation, Agent Ortega, and shortly prior to employment with Defendant Simply Self Storage and seeking employment (prior to that intensely intimidating engagement which was purely fraudulently termed 'employment') while intimidating Powell for speaking with a Federal Bureau of Investigation agent in Tampa, Florida within two (2) months of an employment offer with Simply Self Storage agents. It is alleged the employment was to perpetuate economic hardships begun after employment had ended with 'Broad and Cassel' and was in retaliation for conveying relevant insights into eminent domain fraud. After leaving employment with Simply Self Storage agents, Powell conveyed more relevant insights to the Federal Bureau of Investigation due to more threats occurring after moving out of the Orlando area within Florida. Plaintiff Powell asserts Akerman Senterfitt's involvement with Wanda Brown, personally, and representing the bank that funded loans to Simply Self Storage while C. David Brown, II was counsel for Simply Self Storage and its several acquisitive entities and alter-egos immediately prior to Powell's employment and then shifted out of sight as counsels while C. David Brown, II's former paralegal, 'Broad and Cassel' former employee as an 'IT' trainer, and personal affiliate to him, Defendant

Hanley, served as a 'superior' to Powell for a period of ninety (90) days while Powell administered acquisitions involving another lender. After that initial undeclared 'probationary period' the lender transitioned back to the 'normal' lender and Akerman as lender's counsels without the prior attorney's overt involvement who had been used prior to Powell becoming employed who also was the one who privately interviewed Powell at Akerman when she conveying she was a close friend of Wanda Brown's before another lawyer (witness) entered into the conference room to participate in an 'interview'). Powell asserts the interview was contrived to ultimately become intimidating due to the numerous hard-copy files at 'Simply Self Storage' which clearly showed her as lead counsel for the lender in numerous closings. Due to Akerman's activites being timed close to disclosures made to the Tampa Federal Bureau of Investigation, Powell asserts pre- fraudulent attachments to Powell as a purported employer was discussed by other Akerman staff members and diverted from a purported employment opportunity to 'Simply Self Storage' with more pre-planning which were collusive with the Browns, Hanley and Simply Self Storage agents to fraudulent employ and terminate employment of Powell which would enable tracking of Powell through post-'employment' needs for employment references. Due to violations of the 'RICO' laws, Plaintiffs seek compensation of treble damages relative to obstruction of justice. Powell has reason to believe Akerman associates were, at that time, representing the Browns, either formally or informally, in a federal investigation of the portion of a right-of-way project which preceded the disclosures Powell made to the federal agent shortly to being employed with Simply Self Storage agents. Fraudulently offering and appearing to affect employment relationship were created to impair future employability by adversely affecting credit reporting relative to a pre-hiring screening, stability in housing and employment history on a resume' and other types of employment applications. These fraudulent employment activities have not stopped as of June 19, 2017, involving another fraudulent entity who is not a party in this action yet. No amendment to add parties has been allowable due to this Court's activities thwarting any belief that a 'proceeding' has or may possibly exist in a fair and unbiased forum despite Plaintiffs requesting a *jury trial*. Plaintiffs assert the Court has sufficiently 'poisoned the well' with the two elicit Orders and effective 'expungement' of a pleading from the record that *it is obvious there is absolutely no*

*reasonable ability to anticipate any fair administration of this case could ensue with the assigned judge* and, due to this, Plaintiffs strongly suggest the Court's orders were predicated to administer a final conclusion of this case, disallowing service on third-parties, while never allowing Plaintiffs to proceed in any manner. Plaintiffs allege responses were preordained to be rejected, regardless of content and timeless (after first prejudicing plaintiffs by eroding at significant time periods to respond in both instances, i.e. four days, plus the weekend and holidays which would have been afforded for any ten day Order which the four day withholding (at least) created).

13. Additionally, this Court has averted Plaintiffs' rights to an appeal typically afforded under Rule 54(b) regarding rulings and orders as defined in the Federal Rules of Civil Procedure while seeking an interlocutory appeal relief from a higher court regarding same. The Court's 'dismissal' of Plaintiffs' requests for a non-presidentially nominated and Congressionally affirmed/confirmed judge, pro hac vice, in lieu of issuing an appealable ruling or order is another abnormal denial of access to due process which is extraordinarily outside normal judicial practices. Plaintiff Powell asserts this obstacle is to ensure abusive powers stay within presidentially nominated and congressionally confirmed programming which facilitates biases and long-term fraud involving cronyism, at best, and treasonous activities by non-elected presidents which is more particularly described in the Response to Rule to Show Cause and the First Supplement and Amended Complaint which discusses Senator Scalia's shooting and posturing for the Bushes' after killing/sacrificing an 18 year old young boy during his high school senior era, Michael Douglas, by Laura Welch (Bush) in Midland, Texas before President Kennedy was murdered three weeks in Dallas, Texas. The date of Kennedy's assassination was chosen due to Welch's dad's birth date, November 21, erev November 22, and both of Douglas' parent's cemetery engraved stones depict they were murdered, also, by the Bush family members either directly or by at least one agent, such as the two males and two drivers of get-away vehicles who appeared at the Powell household at 2211 DePauw Ave., Orlando, Florida. Both Welch and George W. Bush were under 20 years old and 'chosen' to assume, fraudulently, the Whitehouse to administer harm while protecting criminals. The Bush couple's wedding anniversary is on a date centered on the killing of Douglas and the fraudulent 'election' for his first fraudulent, presidentially-termed hoax. Plaintiff

Powell asserts the Court's immediate 'dismissal' of the First Supplement and Amendment to Verified Complaint averting its relevancy to these issues is bears merit for criminal prosecution within the realm of conspiracy after the fact of a murder of young Michael Douglas and others and immediate suspension of the Courts' passport(s) should be considered. Judge Dalton's activities are the same as Supreme Court Justice Scalia's in the *Bush v. Gore,* 531U.S. 98 (2000), which was begun by Chief Justice Scalia intending to 'skip' taking evidence before ruling on the case for which Powell believes he was murdered for making his fraudulent involvement to skip judicial legal remedies too quickly and obviously for Defendants' comfort to allow 'RICO' activities to permeate through the justice system. Two associate judges urged Scalia that they should take evidence, first. Plaintiff alleges Dalton's nomination and appointment is predicated on these requirements, also. According to reports, they also 'skipped' conducting an autopsy of Supreme Court Justice Scalia, buy a telephonic decision of another judge.

14. As to Defendants Deitz and the Zimmerman Sutcliffe law firm involvement, Plaintiff addressed their involvements in the Verified Complaint and Plaintiffs will willingly supplement that information in another complaint filed in federal court. It is relevant to place in this record that this Court should be aware that no competent lawyer would take any case with an outstanding order requiring a response in less than ten (10) days. Therefore, issuing an actual six-day response time or less (including delays for mailing from Florida to Minnesota) defies federal rules standards, illegally, while averting a well-known period of forty (40) day period allowed to amend alleged 'shot-gun' complaints, notwithstanding a typical thirty (30) day period.

15. The mere submission of a Complaint by Plaintiffs evidences seeking reliefs *to which they believe they are entitled*, to administer defendants' interests without a motion for summary judgment or for dismissals, plus those administrative actions depicted in aforestated paragraphs; however, to specifically comply with page 3, paragraph 1, subsection (1) with redundancy which controversially prolongs these pleadings due to prior statements by the Court alleging the initial pleading is the 'anti-thesis' of concise and simple statements, Plaintiffs hereby assert they are entitled to relief by this court due to federal statutes and diversity of citizenships with the primary activities occurring while

Plaintiffs and primary defendants were citizens of this jurisdiction and venue. Plaintiffs *demand*, in accordance with subsection (3), relief of treble damages for 'RICO' activities by all defendants for a) fraud, b) securities fraud during and after the Evine Live, Inc., agents and associates' fraudulent employment through fraudulently reporting stock activities and merging and severing, informally, for financial enrichments from an investor; mail fraud by Liberty University and its agents, false advertising by Liberty University and its agents and former fraudulent employers, wire fraud by Liberty University, breach of implied and actual warranties of former fraudulent employers and interviewers. Original citizenship of Plaintiffs and the first several listed defendants' places of domicile and/or principal places of business attaches with this jurisdiction regarding to interstate activities involving Indiana, Virginia (Liberty University), Minnesota (Evine-related events, associations and agents). Plaintiffs have specified the forms of relief to which they are entitled in the Verified Complaint, as amended and supplemented by the First Supplemental and Amended to verified Complaint which is incorporated herein by reference as it is still part of the record. Plaintiffs further identify forms of relief to which they are entitled in this instrument.

16. Plaintiffs allege the necessity and/or tradition of citing that Plaintiffs are entitled to relief, without presumptions, is due to their being represented by law firms and/or lawyers. It is further alleged, when parties are pro se', it is sufficiently evidenced their appearing before the court seeking relief that they believe they are entitled to same. This Court compelling Plaintiffs to employ strict conformity to tradition is more evidence of biases toward the law firms sued in this action and others similarly situated. Plaintiffs also allege this Court is protecting stock interests owned by many, illegally, as a form of *insider* activities which has been employed against Plaintiffs by some Defendants. Allowing the case to proceed will allow bona proof which will be detrimental to stockholders' portfolios. The Court has a clearly established obligation to disregard strict conformance when litigants appear pro se'. Furthermore, the Court foot-noting on page four (4) of the July 25, 2017 order that Plaintiffs should attend a 'clinic' evidences his fraud by acknowledging the elaborate extent courts are to convey to them to help pro se' litigants who cannot afford lawyers to practice in federal courts. This is to avert denial of access to due process and, particularly, courts being an elitists' forum based on wealth

which would empower affluence and further debilitate the poor. This further defines Dalton and this Court's collusive 'RICO' activities with Defendants who/which have debilitated Plaintiffs due to creation of poverty, first, and being subscribed to losses of greater powers and influences. Dalton being partnered with Martinez (Ruiz) and being his lawyer while this case outlined evidence that the Department of Housing and Urban Development (HUD) has housed at least one Cuban who has threatened the life of minor child Plaintiff while communicating via the media from the Sandy Hook (Newtown, CT) events to the Cuban housed in the same building as Plaintiffs should proceed against them (while, as felon, he coaching at the Plaintiff minor child's high school and after already being a present witness of a murder in Miami, Florida involving other Cubans). These elements convey the purity of Dalton's betrayal of his judicial duties while colluding with Defendants. Due to the broad-based involvements in Bush methods, it is believed Martinez was appointed from Orlando, as a non-citizen Cuban, to help assist with positioning for harm against 'patriots' and 'christians' in low-income HUD-sponsored venues without allowing any consequences to criminals for their collusions.

16. A pattern of racketeering has occurred within the past ten (10) years with at least two acts of activities. Part of the initial ten (10) years was created as a part of racketeering activities to avert obvious culpabilities by 'Broad and Cassel', Orlando-Orange County Expressway Authority, Orlando Sentinel and their agents, including Shaw, J. Gary Miller, Shutts and Bowen, Miller South and Milhausen before beginning relentless activities against Plaintiffs life, academic pursuits and more recent employment relationships. A seven (7) year diversion period was installed by Defendants to avert criminal culpabilities relating to Plaintiffs' rights to file an 'EEOC' claim and a whistle-blower case and redirecting attention to primary Defendant entities for having motives for murdering Plaintiff Powell and minor child. The last which has been during March, 2017 and another activity ended June 19, 2017. ''RICO'' requires at least two acts of racketeering activity, the last of which occurring within ten (10) years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. Said activities have been within a continuity with same or similar results, participants (types), victims and methods of commission, are interrelated by distinguishing characteristics and not isolated events pursuant to findings in *H.J. Inc. v.*

*Northwestern Bell Telephone Co.* with activities having a nature of projecting into the future with the threat of repetition(s).

17. 'RICO' applies to racketeering is defined as a criminal enterprise that affects interstate commerce and uses illegal means to further its end. Plaintiff was an American Bar Association Certified Paralegal whose business trade skills were taken interstate and attacked from entities ranging from Florida, Minnesota, Massachusetts, Illinois and other destinations. Plaintiff also sought to augment a career with advancements in her academic credentials and broaden marketability to over-come the adversities created by former employers and said adversities, racketeering, attempts to murder and/or create terrorisms to allude very clearly an intent to murder either or both Plaintiffs during two academic investments to such a degree that Plaintiff has abandoned pursuing finishing her degree track. Said terrorisms were committed into the homes of Plaintiffs during online course access and intensely into the 'bodily personal space' of Plaintiff Powell, adversely affecting Plaintiff minor child.

18. Said racketeering activities violated wire-fraud laws under 941 18 U.S.C. 1343 which legal requirements of proof shall be met with preponderance of evidence. Additionally, wire fraud is identical to the mail fraud statute except that it speaks of communications transmitted by wire); *see United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.), "(the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used). As to these elements, Plaintiffs allege that mail fraud and false advertising was also employed by racketeering with regard to Liberty University and defendants related to being its agents as a faculty or other employment relationship." This statute defines elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v.*

*Frey*, 42 F.3d 795, 797 (3d Cir. 1994). Mail fraud is defined under 940. 18 U.S.C. Section 1341—Elements of Mail Fraud, there are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme.") which Plaintiffs allege has occurred and for which treble remedies in a form of relief is sought.

All acts have occurred regarding wire (via telephonic and internet contacts) and mail fraud and for which Plaintiffs are seeking damages of actual losses via payment of tuitions, books, various fees, equipment, internet costs, loans (principal and interest), losses of access to valid courses with federal grants and federally subsidized low-interest loans to accomplish Plaintiff academically to either augment an established paralegal and/or management successful and economically gainful career. Plaintiffs are entitled to treble damages for both wire and mail fraud. As stated before, Plaintiffs are seeking punitive damages for all actions committed against Plaintiffs. Unpaid wages are also sought in treble damages due to the general racketeering nature of losses and economic gains in past, present and future until such time Plaintiffs are fully compensated for anticipated past, present and future losses including loss of health, mental anguish, and future related losses regarding plaintiff minor child and Plaintiff. Plaintiff's personal employment enterprising to support herself and minor child was adversely affected through racketeering, i.e. dishonest and fraudulent, methods.

19. Insofar as Liberty University, its involvement was through the use of terroristic and/or harassing faculty members immediately timed around direct threats made through it to Plaintiffs through the internet and its online programs. It has also depicted itself as a moderately fundamental 'christian' university and has proven itself to be the antithesis of any 'christian' ethic of healing, educating and preserving lives which was and is depicted through Christianity. As such, it has falsely advertised itself to Plaintiff Powell and perverted the Christian religion orientations to Plaintiffs in a racketeering enterprise

which has created enormous harm to plaintiff minor child's understanding of 'Christians' and their potentials to overtly seek to harm her and others similarly situated, including those who have not survived their activities and agendas by academic harm and/or a death. For these activities through faculty and staff members and through defendant Shenandoah Baptist Church and its (former) board members, Plaintiffs seek monetary compensations for attacking Christians and their values, in particular, while purporting, fraudulently, they are conservative Christian venues which has met the legal definitions of scheming through mail and wire fraud. For these elements, Plaintiffs are seeking treble damages.

20. Plaintiffs also assert agents of Liberty University affected perverted methods to particularly cover-up their activities and to also posture directly to Plaintiff Powell racketeering access into Powell's private life and home, particularly through one faculty member who allegedly was co-employed with the Department of Justice which activities were intensely persistent for a period of approximately one academic year ending with the death of Michael Brown in Ferguson, Missouri whose death began a ten (10) day count-down to a three-day terroristic threatening period from Defendant John Ellis Bush, Sr.'s wife's birth date of August 17-18, his sister's birth date of August 17-18, and Defendant 'Bill' Clinton's birth date of August 19 while Powell's online adjunct professor was employed with Emerson Electric (from Emerson's Chicago, IL as a Virginia domicile, which protections were facilitated through Defendant McAuliffe and/or his close affiliates after Liberty University harbored the former governor until McAuliffe had an opportunity to 'take' his office while being involved in debilitating a primary political opponent on the same day a student, Joshua Hathaway, was co-killed in Liberty University property located in Virginia.) which is head-quartered in Ferguson, Mo., in a very organized and terroristic and racketeering organization. Powell asserts prior to, during and after Powell was a student with Liberty University, it was compensated through tax-deductible payments and paid-out some or all of those funds as 'GOP' speakers' payments which defrauded the entirety of the university expectations that donations would be judiciously used for education purposes of its students to further 'christian' education and other legal agendas: not treasonous, possibly money-laundering and/or tax-evasive methods or a blending of the non-profit with its related Political

Activist Committee while conveying political rhetoric during convocations and commencements (such was discussed by Falwell, Jr. regarding Trump, Sr.'s recent justification of different types of white-supremacy – good and bad - on a morning political program televised on 8/20/17, ABC) in lieu of conveying Christian-based concepts and encouragements through Christian leaders worthy to address large Christian audiences within reasonable Christian standards. Plaintiff Powell alleges 'counterfeiting' was employed by the Liberty establishment to further its enterprising and cover-ups for its activities for which Plaintiff seeks treble compensations, as punitive remedies, plus general compensation for harm and actual losses of incomes and costs, for being deliberately deceived and induced into a degreed program which was never finished by Powell due to posturing via online courses during an academic year of nine-months which intensified toward the end so much so that Powell has never taken another course anywhere. Plaintiff seeks compensations for all related losses, i.e. past, present and future, both actual economic losses and malicious acts taken against Powell as a degree-seeking student and the minor child Plaintiff which has caused losses related to a sense of well-being and security and a general state of mental anguishing and sufferings. Due to Defendant C. David Brown, II, being positioned as a top-tiered board member of a national academic institution which was closed and eroded the efficacy of federally-paid tuition and loan programs, Plaintiffs allege the enterprising by Liberty University is substantially similar to the impacts on Plaintiff Powell's inability to use the advancement of academic investments after being tethered with debt which will affect economic slavery to low-income employment opportunities to pay-off education loans. Plaintiff Powell seeks reimbursements of all academic other credit debts and costs, including interest, to convey payments to third-party creditors and to be made whole after a making benign academic investments which has not rehabilitated nor redefined any career.

20. Plaintiffs assert activities have been Hispanic-racially-motivated and religion-motivated which has already listed relief under the Civil Rights Act of 1964 while citing the federal statutes.

21. ADDITIONALLY, this Court generated a Rule to Show Cause why his first attempt to dismiss the case should not manifest. It has not been ruled upon, yet, and

Plaintiff Powell asserts it is part of his pack of ammunition reserved in the event he does not feel comfortable with finalizing this case (again). The response was timely filed and projected in it information relating to a Jimmy Kimmel Live! program which was used by Defendant George W. Bush to participate in events and plans against Plaintiff's child through referencing an author whose name was substantially the same as a boy and his 'father's' who the child was to have visited on Passover weekend. The airing of the program was on the evening of March 2, which is jewish March 3 erev which is the birth date of Attorney Harry M. Whittington who was the shot-gun shooting victim of 'Dick' Cheney who was Defendant George W. Bush's administration at that time. For the record, Plaintiff recalls Defendant George W. Bush was reported to have been part of that hunting party which almost killed Mr. Whittington. Plaintiff Powell asserts the timing essentially conveyed referencing to 'shot-gun' management of problems and more directly (not generally) made that same reference during that segment when the shooting was brought up between Bush and Kimmel. Using Whittington's birth date for scheduling the Kimmel/Bush appearance also linked to the birth date of Plaintiff's minor child which was used for an attempt against her during an Easter (Christian Passover) which was replicated with another (murdered) victim during the following Passover period. Plaintiff Powell believes the minor child was being targeted by these references to become a 'sacrifice' for that year's Passover – which was done by Laura Welch (Bush) and George H. W. Bush with regard to Michael Douglas and President Kennedy, respectively. Plaintiff Powell asserts the Bush/Kimmel conspiracy to commit murder is partly generated through this Court which has ultimately complied with the 'shot-gun' mandated through the program to this Court by the Bush/Clinton regime which trellis with Shuster/Lehmann/King payments for the late Joseph M. Shuster pandering for them to harm this country within similar 'RICO' goals. During the Scalia shooting, the media allowed Florida senator to speak how he had just left the venue before the shooting (which Powell believes was bragging) to posture his birth date as the same as Laura Welch Bush's paternal parent's birth date (November 21) which was used to plan the murder of President Kennedy three weeks (November 22) after Michael Douglas was murdered by young Laura. There is another Louisiana Senator from Shreveport whose birth date also aligns with these dates (Nelson) which is where the minor child is depicted

to have been born on her birth certificate. The shooting in Virginia where Defendant McAuliffe is governor and was the first media spokesperson that morning, was a threat against Plaintiffs and a form in intimidation against Powell and her child to not make these disclosures in this lawsuit or elsewhere for the public.

22. This Court has made a distinction the original complaint has been dismissed in the August 10, 2017 order on page 2, " . . . it is ORDERED AND ADJUDGED as follows ". . . 2. Plaintiff may amend her complaint . . . not a document that supplements the previously dismissed complaint." Based on this, the Court's own verbiage cites the Verified Complaint is already dismissed and that the August 10, 2017 '<u>ORDER</u>' *completely lacks jurisdiction* over another dismissal and the case as a whole after this case was dismissed by the Court by August 9, 2017, having allegedly failed to adequately comply with the July 25, 2017 Order. Due to the previous paragraph, and other indications cited herein regarding withholding release of an order which is actually a ten (10) day order being mailed from Florida to Minnesota via regular U. S. Postal Service mail by the Clerk, according to the Federal Rule of Civil Procedures, notwithstanding this Court making an fraudulent record to make it appear it allowed more fourteen (14) days for responses. Plaintiffs cited this tactic already being used for the July 25, 2017 Order which perpetuation thereof is a 'won't back down' illegal 'RICO' activity. This four-day withholding of transmission was done with his first (July 25, 2017) order which evidences there are intentional acts of treason by the Court which involved conspiracy to commit murders. The activities generate incremental annulment of the effectiveness of the Federal Rules of civil practice, incrementally, as do fraudulent orders, such as the August 10, 2017 and July 25, 2017, which are engineered into being manifested by third parties and potential defendants and cited Defendants. Disposal of this case also seeks to control releases of media conveyances which avert Freedom of the Press rights cited in the Bill of Rights and general Freedom of Speech. The replication of illegal methods (withholding transmissions of Orders from being mailed, fraudulently depicting the 'effectiveness' of an order is generated four (4) days earlier than it actually has, and conveyance of allegations of (Whittington-related) shot-gun pleadings exist while repeatedly disregarding a judicial standard for allowing up to forty (40) days to 'replead') depicts a 'won't back down' requirement of a movement that has treasonous goals, in lieu

of repentance of aberrant and illegal activities. This type of activities has grown so bold that one district court judge is quoted by the Minnesota Court of Appeals to have told a female litigant that so long as she was in his courtroom, she had no constitutional rights. It also cited her being profusely interrupted by the judge in such a manner she was unable to convey any flow of oral 'stream of consciousness' for a bona fide review. Powell learned from a close-associate of the litigant that it was not enough to administer the legal issues: they tried to destroy her, despite her being ill with cancer, had no income. In light of the misconduct of this Court, together with Plaintiff Powell recently learning that Judge Dalton has represented 'Mel' Martinez as his legal counsel and, despite this, the Court has not allowed the requested recusal. The movement leverages relationships to allow protected communications, such as attorney-client privileges and husband/wife immunities (former Chief of Police of Orlando whose husband is the current Sheriff of Orange County and former Chief of Police Orlando whose wife immediately succeeded him) from testifying against each other, to intensify its ability to operate with legal protections within the 'treasonous' movement's agenda. Additionally, the nature of Martinez' close relationships with the Bush political influences as one who co-administered Section 8 matters which have been depicted in this case presents three strong reasons this Court's refusal to recuse himself has been within the scope of unethical misconduct and is not immune from criminal prosecutions with some Defendants whom he has protected by his activities. Martinez (Ruiz) promptly was used to thwart a probe into George W. Bush's administration regarding torturing males in Cuba which shows a merge of administrations' criminal activities between two different political and within the same light of the consistent ''RICO'' activities with the 'treasonous' agenda. Proving Bush's 'election' was fraudulently conveyed would make void appointments of federal judges nominated by him, as would be the case with any federal judge appointment stemming from fraud to protect criminal activities by Defendants. Proving Obama's installment was predicated by fraud regarding citizenship and/or being an alter-ego to another agenda and people makes his activities 'void' while in office as 'president' for almost a decade. This is more particularly conveyed being relevant through Obama's appointment of an Iowa federal judge in a federal judicial district where Obama spoke with a back-drop of 'mallets' which promoted Defendant

CenturyLink business interests, illegally, from Cedar Falls, IA making a relatedness to its Souix Falls, IA location and Des Moines. IA from where political campaigning began by major parties which involved four (4) Defendants listed in this former case. The mallets were discussed in at least one previous pleading to posture relatedness to Defendant Mallett and Plaintiff Powell's employment under his direct supervision at ''Broad and Cassel'' while he worked for that firm in Orlando and Tampa. In Virginia, a mallet was used to posture a threat against Plaintiff, using a post-murder investigation report to convey said threat. This relevancy disclosed in pleadings has been 'dismissed' by Dalton, peremptorily, to divert any attention from the true concerns about his and others' fraudulent appointments and related liability exposures from said installments stemming from fraud which makes them all 'void'. The Court changing the true caption seeks to avert third-parties finding vital pleadings, which are mandated to be easily accessible to anyone as part of tax-paid public records, that relate to ''Broad and Cassel'' and its Chief Financial Officer for years: C. David Brown, II. Plaintiff asserts this Court has shown its concerns, by citing his wife as the first captioned Defendant on the court docket, the public would associate CFO Brown with the former Dallas Chief of Police David Brown who presided over events shortly after the Orlando events in mid-June, 2016 involving conveyance of deaths of officers in Dallas, Texas which led to a public ceremony with George W. Bush and Barack Obama with their spouses. These associations incriminate 'Broad and Cassel''s CFO Brown's involvement in planning the events. These activities should be considered with an understanding that the sooner a political coup occurs, the better, since criminal prosecutions cannot exist without a U. S. Constitution existing since it is the core exemplifications of why federal courts are relied upon by and for 'The People'. This Court's insistence on 'short and plain' statements would avert these vital factual insights entirely. Martinez (Ruiz) was reported to have threatened the Spanish government officials with consequences from investigating Bush administrators, including Alberto Gonzales who was disengaging criminal prosecutions, incrementally, by profusely firing incumbents until he was removed as Bush's U. S. Attorney General and that the USA would ignore prosecutions the Spanish government judgments against Bush's administrators. The Spanish government conveyed to Obama's administration (acting on behalf of the Bush administration), via Martinez (Ruiz), its reliance upon

constitutional requirements of separation of the executive and judiciary branches. These same requirements have been are being breached by this Court in this case. To allow appointment of a non-executive branch judge to govern over this case, pro hac vice, would disenfranchise the ''RICO'' activities and create a precedence of 'somewhere to go' in an environment administrations have believed to have it 'all sewed up' (southern slang) before cases are even filed. Such was the fraudulent process of George W. Bush's alleged 'election' which was 'all sewed up' since before the deaths of Michael Douglas and President John F. Kennedy who were demonically 'sacrificed' for his and Laura Welch Bush's installments into the Whitehouse. The Hispanic nuances permeating these facts relate to the 'Caucasia Program' as an agenda of elevating 'white' people while killing all others. The Orlando deaths of entertainer Ms. Grimmie (whose family was called 'Grimms' by her manager/step-dad of Selena Gomez who was near the events at the time), Pulse Club, and toddler Lane Graves (Floridian) was overtly depicting 'Grim Pulse Graves' by the movement which overtly reiterated the German nazis' boasting of making an innumerable amount of its victims suffer physically profusely until their pulses became grim before they were marched to the edge of pits to be shot dead. The 'Grim Pulse Graves' boasting conveyed the 'won't back down' methods and shamelessness. These events centered on George H. W. Bush's birth date which was also when the queen of England chose to celebrate her April birth date. Due to the queen's issuance of an edict two months prior to Andrew being born that Charles, his first born, etc., would be in the lineage of her husband's German 'royal' heritage, all of the United Kingdom will be under German rule as a continuance of World Wars I and II. The 'b-loody [good] show', as an Englishmann would say with its English accent, in Orlando relating her with the Bush crime family primarily was against Hispanics on 'Latin Night' as part of Bushes' and the queen's proliferation of the Caucasia Program within its anti-Christ agenda.

23. Plaintiff asserts the only 'chance' which was fraudulently alleged by the Court that existed in the August 10, 2017 order was another 'chance' for the Court to revise the first order to affect a dismissal 'with prejudice' which was obviously desired when the first order was issued since the result is his amending the July 25, 2017 dismissal order (implied without prejudice) with the August 20, 2017 dismissal order 'with prejudice'.

Plaintiff asserts this Court's actions are beyond any realm of any defenses of lack of knowledge or lack of skill and have been criminally malicious against Plaintiff, particularly against Plaintiff minor child who has been enormously harmed.

24. IT IS FOR ALL THESE REASONS, especially due to the last portions regarding this Courts' activities cited in prior paragraphs this case is VOLUNTARILY DISMISSED pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure which is done to avert the issuance of another illegal declaration by this court that it has always had jurisdiction over the case and may issue a dismissal with prejudice. For the record, there has been no move by a party for the Court to change the dismissal, nor any appeal filed to seek a decision of remand to change it. Plaintiff Powell reiterates all sworn statements in the Verified Complaint without any effect on refiling and is more than willing to swear under oath the statements contained in the Frist Supplement and Amendment to Verified Complaint and this instrument. The Jimmy Kimmel Live! March 2, 2017 Bush event is posted online and available for public review. Between the Whittington indirect and direct referencing to 'shot-gun' activities and directly referencing Plaintiff's minor child's plans to be in a different town with two Larry Holcombs, it is believed that television segment was conveying activities to dispose this case before it was even filed – including disposal of a valid plaintiff (minor child) to predispose the case to her non-involvement due to her being co-murdered/sacrificed by the Bush/Clinton regime and its criminally motivated movement which involves many cited Defendants. Additionally, Magistrate Kelley had clear and direct knowledge about his own conflicts of interests as being formerly employed with and/or for Defendant Akerman law firm and its agents that he has forsaken his mandated duties by not formally making disclosures and recusing himself, also. Plaintiffs believe the inordinate purpose of Kelley mandating, contrary to Federal Rules – regarding brevity, conciseness (to which Dalton has referred, repeatedly, in his two Orders issued during the past two months) and allowance of abbreviated captioning of pleadings, that a three-page caption be affixed to every pleading was to repeatedly, overtly posture he was aware of all conflicts with Defendants and was not 'understanding' anything but illegal activities relating to those Defendants which presented conflicts.

25. It is asserted, also, this Court alleging it cannot 'understand' Plaintiffs' pleading(s) is to depict it cannot serve it through submission as a 'public servant' and has nothing to do with his ability to comprehend it/their contents. The use of 'understanding' in this context is also a primary reference point by the movement which has 'nazi' persuasions which uses those who may claim foreign citizenship one way or another (through two parents born in another country, by a foreign country's liberal law, conversion into a form of self-declared Judaism giving it citizenship with or without a Bit Den (which are illegal since they alienate people from 'inalienable rights' in the U. S. Constitution) allegedly ratifying Israeli citizenship).

26. Plaintiff Powell asserts it cannot 'understand' or serve the Order dated August 10, 2017, due to lack of jurisdiction which is conveyed through the Court's own admission on page 2, subsection 2 (of his adjudications cited therein) that the complaint had previously been dismissed by it. By operation of law, said dismissal is and shall stand 'without prejudice' due to the Court's failure in its July 25, 2017 to state the impending dismissal was to be 'with prejudice'. If the Court seeks to express more attempts to convert that order, Plaintiffs have 'trumps' him with the instant Voluntary Dismissal which, again, averts jurisdiction for it to do so.

No Certificate of Services is required due to, obviously, no parties have been served a summons and, obviously, no answer has been filed to date.

This 23rd day of August, 2017.

PAMELA POWELL, Pro Se'
721 Lake Susan Drive, #309
Chanhassen, MN 55317
(952) 457-3268

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
US COURTHOUSE
401 W. CENTRAL BLVD., SUITE 1200
ORLANDO, FLORIDA 32801-0120

OFFICIAL BUSINESS

UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004266327
$ 00.46⁰
AUG14 2017
MAILED FROM ZIP CODE 32801

5531734738 R007